

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed March 07, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SOPOREX, INC. et al., | § | CASE NO. 08-34174-BJH-7 |
| | § | |
| Debtor. | § | |
| | § | |
| DIANE G. REED, as CHAPTER 7 | § | |
| TRUSTEE of SOPOREX, INC. and | § | |
| SOPOREX RESPIRATORY, INC., | § | |
| Plaintiff, | § | ADV. PRO. NO. 10-3126-BJH |
| - against - | § | |
| | § | |
| CARECENTRIC NATIONAL, LLC, | § | |
| CARECENTRIC, INC., MESTEK, INC., | § | |
| STEWART B. REED, JOHN R. FESTA, | § | |
| LYLE W. NEWKIRK, RALPH CAPASSO, | § | |
| STEPHEN M. SHEA, and STEVEN F. | § | |
| OLEARCEK, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On May 5, 2010, Diane G. Reed as Chapter 7 Trustee (the "Trustee") of Soporex, Inc.

Memorandum Opinion and Order

("Inc.") and Soporex Respiratory, Inc., d/b/a Independence Home Pharmacy ("Respiratory" and, together with Inc., "Soporex")[1] filed the above-captioned adversary proceeding against Carecentric National, LLC ("CCN"), Carecentric, Inc. ("CCI"),  Mestek, Inc. ("Mestek"), Stewart B. Reed ("Reed"), Lyle W. Newkirk ("Newkirk"), Ralph Capasso ("Capasso"), Stephen M. Shea ("Shea"), Steven F. Olearcek ("Olearcek") (collectively, the "Group Defendants") and John R. Festa ("Festa"). The Trustee alleges that (1) CCN was owned directly or indirectly by Mestek and/or  CCI, (2) CCN is the counter-party to a pre-petition contract with Inc., (3) Mestek is a privately-held corporation controlled and/or wholly-owned and operated by Reed and his father John Reed, (4) Reed is a director of Mestek and CCI, (5) Festa  is President and Chief Executive Officer of CCI, (6) Newkirk, Capasso and Shea are officers of CCI, and (7) Shea and Olearcek are officers of Mestek.

The Group Defendants and Festa have moved to dismiss the Trustee's complaint (the "Complaint").  The Group Defendants filed their motion to dismiss the Complaint on July 2, 2010 (the "Group Defendants' Motion").  On that same date, Festa also filed his motion to dismiss the Complaint (the "Festa Motion") (collectively, the "Motions").  After extensive briefing, the Court heard the Motions on October 5, 2010.  The parties filed further post-hearing briefs, following which the Court took the Motions under advisement.  This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr. P. 7052. The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1] Inc., Respiratory, Soporex Sleep Solutions, Inc., Soporex DME, Inc., Winmar Diagnositics North Central, Inc., Pediatric Sleep Solutions, Inc., Soporex Respiratory Holdings, Inc., Soporex Sleep Holdings, Inc., Soporex Respiratory II, Inc., Soporex Wholesale, Inc. and Soporex Staffing, Inc. (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 7 on August 22, 2008.  The cases are jointly administered under Case No. 08-34174-BJH.  Only Inc. and Respiratory are named plaintiffs here, however.

## I.  FACTUAL BACKGROUND

Prior to its bankruptcy filing, Respiratory (which was wholly-owned by Inc.) provided physician-prescribed medications and related supplies and equipment to patients afflicted with chronic respiratory disorders.  In the Complaint, the Trustee alleges that Soporex[2] acquired a very large number of active and inactive respiratory patient accounts in 2006 under an asset purchase agreement, and that at the time of the acquisition, Soporex did not have data processing systems in place sufficient to process prescriptions for that number of patients, nor for the billing and collection of charges for the prescriptions to be filled.  Most of the patients were served by Medicare, such that much of Soporex's revenue would be derived from billing through Medicare's reimbursement program.  Because Soporex did not have the necessary data processing systems in place, Inc. entered into an agreement with CCN, whereby CCN was to provide software and billing services for Soporex with respect to its approximately 26,500 active patients (the "Contract").  The Trustee further alleges that during the course of the parties' relationship, Soporex paid approximately $2.1 million in fees for CCN's billing services.  The Trustee further alleges that the billing services were negligently performed, resulting in uncollectible accounts receivable, and that the defendants misrepresented CCN's ability to fix the problems with billings to induce Soporex to continue to do business with CCN.  The Trustee further alleges that when Soporex discovered CCN's inability to fix the billing difficulties, it planned to transfer the billing functions to an "in-house" system, but when CCN, Mestek and CCI learned of Soporex's intentions, they gave instructions to discontinue Soporex's

---

[2] Paragraph 1 of the Complaint defines "Soporex" to include only Inc.  Paragraph 13 of the Complaint defines the term "Soporex" to include Inc., Respiratory, and nine wholly-owned subsidiaries of Inc.  Thus, in the remaining allegations in the Complaint, when the term "Soporex" is used, it is impossible to tell which entity is being referred to. Moreover, the allegations refer almost exclusively, and generically, to "Soporex." When the Court refers in this Memorandum Opinion to "Soporex" generically, it is because it is impossible to know which entity is involved.  When the Court is able to differentiate, it does so by referring to "Respiratory" or "Inc."

**Memorandum Opinion and Order**                                                                                      **3**

access to its own accounts and records, resulting in Soporex losing all of its billings.

The Complaint is asserted on behalf of both Inc. and Respiratory, with very little differentiation between them in the Complaint. Count 1 of the Complaint, against CCN, alleges breach of contract.[3] Count 2 of the Complaint, against all defendants,[4] alleges negligence in the performance of the billing and collection services and the duties undertaken or assigned to them under the Contract.[5] Count 3 of the Complaint, against all defendants, alleges negligent misrepresentations.[6] Count 4 of the Complaint alleges conversion as a result of Soporex being denied access to the database containing Soporex's customer data.[7] In Count 5 of the Complaint, the Trustee seeks

---

[3] The Trustee alleges several breaches of contract. Specifically, the Trustee alleges certain performance-related breaches, wrongful termination of the Contract, and wrongful retention of Soporex's records, which the Trustee alleges were Soporex's property under the Contract. The Trustee seeks damages of $20 million for breach of the Contract.

[4] Paragraph 12 of the Complaint defines the term "Individual Defendants" to include Olearcek, Shea, Capasso, Reed, Festa and Newkirk. The Complaint uses the capitalized term "Defendants," but does not define that term. Paragraph 66 of the Complaint uses the term "Defendants" to include only CCN, CCI, Mestek, Reed, Capasso, Shea and Olearcek (but not Newkirk). It is thus even difficult to tell which defendants are being sued on which claims, and which defendants engaged in the conduct of which the Trustee complains.

[5] Specifically, the Trustee alleges that the defendants "failed to provide and negligently performed the billing and collection services . . . failed to properly train Soporex's employees in the use of the software . . . failed to provide reasonable support . . . failed to fix "bugs," defects and non-conformities in the MestaMed and PharmMed software, and . . . failed to insure compliance with existing or changing applicable Medicare, Medicaid and private insurance standards, including corresponding formats and claim processes." *Compl.*, ¶ 51.

[6] Specifically, the Trustee alleges that "[t]he Defendants negligently supplied false information to Soporex throughout the contractual relationship between Soporex and CCN. The Defendants also failed to exercise reasonable care or competence in obtaining information that was imparted to Soporex, and which was false. The Defendants knew or reasonably should have foreseen that Soporex would reasonably rely upon that false information. The representations were made for the purpose of inducing Soporex to rely and act upon the reliance of [sic] the false information. Soporex reasonably relied upon the false representations made by the Defendants, including, but not limited to, Soporex's decision to continue to do business with CCN and CareCentric and to pay the fees called for under the Agreement." *Compl.*, ¶ 57.

[7] As noted earlier, the Complaint does not define its capitalized term "Defendants." However, when addressing the conversion claim, the Trustee refers to the actions of "CCN, Carecentric, Mestek, Reed, Capasso, Shea and Olearcek." *Compl.*, ¶¶ 64, 66. The Court therefore assumes, as does Festa, that Festa and Newkirk are not sued for conversion.

**Memorandum Opinion and Order**                                                                 4

disallowance of CCN's proofs of claim, on the ground that she disputes that Soporex owes any

money to CCN.[8]  In Count 6 of the Complaint, the Trustee seeks her attorney's fees "to the extent

permitted by the Agreement and applicable law."  *Compl.* ¶ 71.  In the Complaint's prayer for relief,

the Trustee seeks damages of $20 million, attorney's fees and costs, post-judgment interest, and

disallowance of CCN's proofs of claim.

## II.    LEGAL ANALYSIS

As noted earlier, both Festa and the Group Defendants have moved to dismiss the Complaint.

As framed by Festa and not disputed by the Trustee, the only claims asserted against Festa are Counts

2 and 3 - for negligence and negligent misrepresentation.[9]  The Trustee asserts state-law claims for

negligence, negligent misrepresentation and conversion against certain of the Group Defendants.  To

the extent the issues raised by Festa and the Group Defendants overlap, the Court will analyze those

issues together.

### A.    *Which Choice of Law Rule Should this Court Apply - Federal or Forum State?*

Festa and the Group Defendants argue that the allegations in the Complaint must be judged

under Texas law, because although the Fifth Circuit has not yet ruled on whether bankruptcy courts

---

[8] CCN has filed two proofs of claim against Inc. and has not filed proofs of claim against Respiratory. The first, Claim No. 54, asserts an unsecured claim for $131,922.98 for "services performed."  The second, Claim No. 111, asserts an unsecured claim in an "unknown" amount.  Attached to Claim No. 111 is CCN's "answer and counterclaim" filed in an action styled "*Soporex, Inc. v. Carecentric National, L.L.C., Mestek, Inc. John R. Festa, and Lyle W. Newkirk,* Civ. Action No. 08-1-1263-42.  That lawsuit appears to have been filed in the Superior Court of Cobb County, State of Georgia prior to Soporex's bankruptcy filing. In its answer, CCN filed three counterclaims asserting breach of contract, and one counterclaim asserting entitlement to attorney's fees.

[9] Festa further contends that the Trustee also asserts a claim for attorney's fees against him, but that the claim for attorney's fees, as pled in Count 6 of the Complaint, is not an independent substantive claim for relief. The Trustee concedes that attorney's fees are not recoverable with respect to the causes of action against Festa for negligence and/or negligent misrepresentation, which are the only two claims at issue on Festa's Motion.  *Pltf's Resp. To John R. Festa's Mot. To Dismiss and Mem. In Supp. Thereof*, ¶ 37.  Therefore, the Court will not address it further in the context of the Festa Motion.

should apply federal or state choice of law rules, the majority, and better, view is that a bankruptcy court should apply the choice of law rules of the forum in which they sit. Festa and the Group Defendants then argue that application of Texas's choice of law rules leads to the application of Texas law, as Texas bears the "most significant relationship" to the dispute between the parties.

In contrast, the Trustee asserts that this Court need not decide whether to apply federal choice of law rules or Texas choice of law rules, because both reach the same result – *i.e.,*, that Georgia substantive law should apply to the tort claims against Festa and the Group Defendants. The Trustee also points out that the Contract contains a choice-of-law provision dictating the application of Georgia law.

The determination of which state's law applies is significant, in part because Texas has a two-year statute of limitations for the claims asserted in Counts 2 and 3 and Georgia has a four-year statute of limitations. In addition, the parties take the position that Texas and Georgia have differing standards (1) for the existence of a legal "duty" with respect to the liability of a corporate employee for allegedly negligent acts, and (2) with respect to whether contractual privity is required in order for a defendant to be protected by the economic loss rule, which prevents recovery in tort upon claims that assert as damages only the economic loss resulting from a contractual relationship. Moreover, the Trustee relies upon a Georgia statute for her entitlement to attorney's fees.

In deciding which state's substantive law governs the issues before the Court, the Court must first determine which choice-of-law rules should be applied. *Schmermerhorn v. Centurytel, Inc. (In re Skyport Global Commc'n, Inc.)*, No 10-3150, 2011 WL 111427 (Bankr. S.D. Tex. Jan. 13, 2011). It is well-settled that a federal court sitting in diversity must apply the choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). However, neither

the United States Supreme Court nor the Fifth Circuit have ruled upon whether a bankruptcy court, which sits not in diversity but by virtue of 28 U.S.C. § 1334, is required to apply federal choice of law rules or is instead to apply the choice of law rules of the forum state with respect to state law claims.  However, this Court need not resolve this issue here, since application of both the federal choice of law rules and the Texas choice of law rules would lead this Court to analyze the same factors in determining which state's substantive law should apply to the Trustee's claims.  *See, e.g., Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 749 (5th Cir. 1981) ("application of an independent federal choice of law rule and of the forum state's choice of law rule would lead to the same result, and thus 'we do not determine which road the trial court should have traveled to arrive at the common destination'") (quoting *Fahs v. Martin*, 224 F.2d 387, 399 (5th Cir. 1955)).  As recently noted in this district,

> The federal choice-of-law rule is the "independent judgment" test, which is a "multi-factor, contacts analysis" that applies the law of the state with the most significant relationship to the transaction at issue.  Texas applies the Restatement's most-significant relationship test to decide choice-of-law issues.  The independent-judgment test and the most-significant-relationship test are the same . . . ."

*MC Asset Recovery, LLC. v. Commerzbank AG*, 441 B.R. 791, 805 (N.D. Tex. 2010); *see Tow v. Schumann Rafizadeh (In re Cyrus II P'Ship)*, 413 B.R. 609, 615 (Bankr. S.D. Tex. 2008) (the independent judgment test or the most significant contacts test is "essentially synonymous with the 'most significant relationship' approach adopted by" the Restatement (Second) Conflict of Laws (the "Restatement"), which Texas also relies upon).

**B.    *Which State's Law Applies to the Trustee's Claims***

**1.    *Statute of Limitations***

Under either federal or Texas conflict of law principles, the Court concludes that Texas

supplies the appropriate statute of limitations in the present proceeding. Under Texas conflict of law principles, courts apply the non-substantive, procedural rules of the forum state. *Arkoma Basin Exploration Co. v. FMF Assoc. 1990-A, Ltd.*, 249 S.W.3d 380 (Tex. 2008). With a few exceptions inapplicable here, Texas generally treats statutes of limitations as procedural in nature for conflict-of-law purposes. *Baker Hughes, Inc. v. Keco R.& D., Inc.*, 12 S.W.3d 1 (Tex 1999); *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384 (Tex. App. – Dallas, 2009). Thus, the Court concludes that Texas courts would apply the Texas statute of limitations to the Trustee's claims.

Similarly, under federal conflict of law principles, federal courts apply the applicable limitations period of the forum state. *Metropolitan Life Ins. Co. v. Dent*, No. 3:01-CV-0772-K, 2003 WL 292161 (N.D. Tex. Feb. 3, 2003). Moreover, under the Restatement, "an action will not be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state."[10] Restatement, § 142. Thus, under the Restatement, the local law of the forum (here, Texas) determines whether an action is barred by the statute of limitations. Restatement § 142, cmt a. Thus, under either federal choice of law rules or the rules of the forum – *i.e.* Texas – the Court concludes that Texas' statute of limitations applies.

2.     *Substantive Law*

There is no dispute that the Trustee's claims for negligence, negligent misrepresentation and conversion sound in tort. Therefore, both Texas courts applying Texas choice of law rules and federal courts applying federal choice-of-law rules would look to §§ 6 and 145 of the Restatement. *MC Asset Recovery, LLC v. Commerzbank, AG*, 441 B.R. at 805; *Tow v. Schumann Rafizadeh*, 413

---

[10] Texas has enacted a "borrowing statute." *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.031 (West 2010). However, no one has argued for its application here.

**Memorandum Opinion and Order**                                                                                   **8**

B.R. at 619; *Faulkner v. Kornman (In re The Heritage Organization, LLC),* 413 B.R. 438, 462 (Bankr. N.D. Tex. 2009).

The Court first rejects the Trustee's argument, made in response to both the Festa Motion and the Group Defendants' Motion, that the fact that the Contract between Inc. and CCN contains a choice-of-law provision compels a different result and mandates the application of Georgia law to the Trustee's tort claims. The Contract states that "[t]his Agreement shall be governed by and construed under the laws of the State of Georgia, excluding its laws concerning conflicts of law." Both Texas and Georgia courts have held, however, that a contractual choice-of-law provision that deals only with construction of the contract does not govern tort claims between the contractual parties. *Benchmark Elec. Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003) (fraud and negligent misrepresentation claims not governed by narrow, contractual choice-of-law clause); *Caton v. Leach Corp.*, 896 F.2d 939 (5th Cir. 1990) (applying Texas choice-of-law rules to determine substantive law to be applied to tort claims despite contractual choice-of-law provision where the contractual provision did not address the general rights and liabilities of the parties); *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423 (Tex. 1999) (contractual clause in employment agreement that provided that the agreement would be interpreted and enforced under Texas law did not govern choice of law with respect to tort claims between the contractual parties); *Baxter v. Fairfield Fin. Servs., Inc.*, 307 Ga. App. 286 (Ga. App. 2010) (where a contractual choice-of-law provision limits itself to the terms of the agreement, it will not govern the choice of law with respect to tort claims between the contractual parties). Therefore, the Contract's choice-of-law clause does not compel the conclusion that Georgia substantive law must be applied to the Trustee's tort claims. Instead, the Court will look to the "most significant relationship/most significant contacts" analysis as set forth in the Restatement to determine

the applicable substantive law governing the Trustee's asserted claims.

Section 6 of the Restatement sets forth several factors relevant to the choice of law analysis: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Restatement*, § 6(2) (2010). Specifically in a tort case, section 145 of the Restatement counsels the Court to consider: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Restatement*, § 145(2) (2010). Thus, each of the factors set forth in section 145 of the Restatement is viewed in light of the more general considerations set forth in section 6 of the Restatement. When weighing the factors under section 145, "it is not the number of contacts, but the qualitative nature of those particular contacts that determines which state has the most significant relationship to the occurrence and the parties. *Asarco LLC v. Americas Mining Corp.*, 382 B.R. 49, 62 (S.D. Tex. 2007).

Before beginning its analysis of the applicable of these principles to the Trustee's tort claims, the Court makes a threshold observation that the allegations in the Complaint as presently framed have, in no small measure, made the choice-of-law analysis difficult. The Complaint lumps Respiratory and Inc. together. The Complaint lumps the defendants together. It is therefore difficult, from the face of the Complaint, to determine which plaintiff is asserting which causes of action against which defendants. It is also difficult to determine in many instances which plaintiff suffered

which injury, where those injuries may have occurred, or where the conduct allegedly causing the injury occurred. To some extent, the parties' further briefing has clarified which plaintiff is seeking relief on which cause of action. For example, it has become clear through the briefing that the Trustee asserts the negligent misrepresentation and conversion claims on behalf of Respiratory only, and she has conceded that Respiratory does not assert the negligent misrepresentation claim against CCN. From this, the Court infers that the negligent misrepresentation and conversion claims are owned by Respiratory, not Inc. The Trustee has not made a similar concession with respect to the negligence claim, so the Court presumes that the negligence claim is asserted by both Inc. and Respiratory, although that is not entirely clear.

### a.    *The Negligence Claim*

Festa and the Group Defendants have raised two substantive state law issues with respect to the Complaint – *i.e.*, (1) whether it sufficiently alleges the existence of a legal duty, and (2) whether the application of the "economic loss rule" bars the Trustee's recovery in tort.[11]  The economic loss rule precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.  *Lamar Homes, Inc. v. Mid-Continent Cas. Co*., 242 S.W.3d 1 (Tex. 2007). "Its focus is on determining whether the injury is to the subject of the contract itself.  In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting

---

[11] The Group Defendants raise a third issue – *i.e.*, whether the negligence claim must be dismissed because it is barred by a "limitation of liability" clause in the Contract.  The Court need not address this issue in choosing the relevant state's law, however, because the Trustee has failed to show the existence of a conflict of laws on this issue.  The burden is on the party asserting the application of foreign law to show the existence of a conflict, and then demonstrate which law should apply.  *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 71 (Tex. App. – Houston [14th Dist.], 2004).  In the absence of such a showing, it is presumed that other states' laws are the same as Texas law.  *Id.*, *see also* p. 14 *infra*.

party's negligence." *Id.* at 12-13.

The Court must analyze which state's law has the most significant relationship to these two issues. *Benchmark Elec., Inc. v. J.M. Juber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) (Texas law requires an issue-by-issue choice of law analysis); *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (stating that it was error for lower court to fail to consider which state's law applied on an issue-by-issue basis). However, the existence of a duty owed by the defendants and the application of the economic loss rule will both determine whether the defendants can be liable to the Trustee. The analysis of choice-of-law with respect to the existence of a duty will be equally applicable to the analysis with respect to the economic loss rule, and rather than repeat the analysis, the Court will discuss them together.

As noted above, the Court should consider where the injury occurred, where the conduct causing the injury occurred, the domicile, residence, place of incorporation and place of business of the parties, and where the relationship between the parties is centered. The Court should also consider, in addition to the general principles listed in section 145 of the Restatement, the more specific sections of the Restatement that are applicable. *Hughes Wood Products*, 18 S.W.3d at 206, n. 2. As relevant here, sections 156 (entitled "Tortious Character of Conduct"), 157 (entitled "Standard of Care") and 159 (entitled "Duty Owed Plaintiff") each provide that "the applicable law will usually be the local law of the state where the injury occurred." Restatement, §§ 156(2), 157(2) and 159(2). At this juncture, it bears repeating that the Trustee argues for the application of Georgia law, and Festa and the Group Defendants argue for the application of Texas law.

### (i)     *Where the Injury Occurred*

Here, the Trustee alleges that the damages resulting from the tortious conduct are comprised

of fees paid to CCN under the Contract, several million dollars in uncollectible accounts receivable, the expenses that "Soporex" (as generically described in the Complaint) incurred in monitoring CCN's servicing of "Soporex's" accounts, and "Soporex's" significant loss of revenue that allegedly caused the Debtors to file for relief under the Bankruptcy Code.   The Court concludes that some of this injury may have occurred in Texas and some in Kentucky – but none of it occurred in Georgia. Inc. alone was the contracting party – presumably, it paid the contractual fees to CCN.   Inc. is a Texas corporation with its headquarters in Texas and thus this injury occurred in Texas.   Respiratory was the entity that operated  the mail-order pharmacy business – presumably, the patient accounts belonged to it, and it was the entity that owned the accounts receivable allegedly rendered uncollectible.[12]   Respiratory maintained its principal place of business in Kentucky.   Thus, this injury presumably occurred in Kentucky.   Both Respiratory and Inc. filed petitions for relief under chapter 7, leading the Court to conclude that both suffered from the lost revenue, and thus this injury occurred in Texas and Kentucky.   It is not clear from the face of the Complaint which entity incurred expenses in monitoring CCN's performance through the hiring of Camfield.   However, the Trustee's application to employ Camfield as a consultant in the bankruptcy case represented that Camfield was employed by Inc., not Respiratory, *see* Docket No. 243 in Case. No. 08-34174-BJH-7, ¶ 11, and thus this alleged injury occurred in Texas.   Accordingly, on balance, while it is difficult to pinpoint whether

---

[12] The Court takes judicial notice of the bankruptcy schedules of both Respiratory and Inc.   When reviewing a motion to dismiss for failure to state a claim, the Court may consider the Complaint, including documents incorporated into the Complaint by reference, and matters of which a court may take judicial notice. *Funk v. Stryker Corp.*, No. 10-20022, 2011 WL 207961 (5th Cir. Jan. 25, 2011); *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009).   The Court may take judicial notice of documents in the public record.  *R2 Inv., LDC v. Phillips*, 401 F.3d 638 (5th Cir. 2005).   The Court may do so whether requested or not, at any stage of the proceedings.   Fed. R. Evid. 201(c), (f).   The Court is permitted to take judicial notice of documents filed in the bankruptcy case.   *Nute v. Pilgrim's Pride Corp.*, No. 07-0081, 2010 WL 2521724 at *1, n.4 (W.D. La. June 16, 2010); *In re American Intern. Refinery*, 402 B.R. 728 (Bankr. W.D. La. 2008); *In re James*, 300 B.R. 890 (Bankr. W.D. Tex. 2003).   Here, Inc.'s schedules do not list patient accounts receivable as assets; Respiratory's schedules do.

**Memorandum Opinion and Order**                                                                                        **13**

the injury occurred primarily in Texas or Kentucky, or some in both places, it is clear that none of it occurred in Georgia.

Significantly, the burden is on the party asserting the application of foreign law to show the existence of a conflict, and then demonstrate which law should apply. *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 71 (Tex. App. – Houston [14th Dist.], 2004). In the absence of sufficient proof, the court presumes that the foreign law is the same as the law of Texas. *Id*; *Burlington Northern and Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287 (Tex. App. – Fort Worth, 2007) (where party fails to request judicial notice of the law of another state, Texas courts presume that the law of the other state is identical to Texas law); *cf. Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2006) (stating that when a party fails to request judicial notice of the law of another state under Texas Rules of Evidence, Texas courts presume the two laws are identical) *and Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000 (5th Cir. 1990) (diversity case applying forum (Texas) law where plaintiff failed to meet its burden to prove the substance of foreign law).

Here, the Trustee has not argued for the application of Kentucky law, and has not supplied any information about what Kentucky law might provide with respect to the imposition of a duty or the application of the economic loss rule. Thus, the Court presumes that Kentucky law is identical to Texas law on those points. Accordingly, the fact that some of the injury may have occurred in Kentucky should not be dispositive where a good portion of it clearly occurred in Texas and none of it occurred in Georgia. Thus, the Court concludes that on balance, the place of the injury – here, Texas (and potentially Kentucky) points away from Georgia. Of course, Texas (and potentially Kentucky) has a significant interest in remedying civil injury to its citizens through tort liability, and

also in defining the outer limits of tort liability. *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990).

### (ii) *Where the Injury-Causing Conduct Occurred*

The Complaint alleges several sites for the injury-causing conduct, but no specific situs with respect to Festa, who is only individually referenced in the Complaint twice.[13]  First, the Complaint alleges that in March of 2006, Festa represented to Soporex that CCN could meet Soporex's needs. The Complaint does not allege how this representation occurred - whether by phone, writing, or in person, and it does not allege where this representation occurred.  Secondly, the Complaint alleges that Soporex's representative met with Festa in Kentucky and told Festa that adequate servicing of Soporex's accounts would require twenty staff members.  The Complaint does not allege any representations or conduct *by Festa* at this Kentucky meeting.  Thus, as to Festa, the Complaint does not allege any particular conduct occurring outside of Texas such that the Court should apply a sister state's law.

---

[13] The Complaint lumps the "Defendants" or the "Individual Defendants" together in most places.  As to "the Defendants" generally, the Complaint alleges that in November 2006, Soporex's representative met with CCI at a Soporex facility in Kentucky and provided CCI with an analysis of CCI's alleged deficiencies.  The Complaint does not allege any conduct *by the Defendants* at this meeting in Kentucky.  The Complaint further alleges that Camfield met with CCI at CCI's offices in Atlanta, and was given tour of CCI's facility.  It further alleges that during this tour, a defendant other than Festa misrepresented the number of CCI employees working on the Soporex accounts.  Thus, although the Complaint fairly alleges injury-causing conduct in Georgia, Festa was not the actor.  Next, the Complaint alleges that Soporex representatives visited CCI's facility in March of 2007 in Pennsylvania, and during this visit, were falsely told that more than twenty CCI employees were working on Soporex accounts.  There is no allegation that Festa was the actor at this Pennsylvania meeting.  Next, the Complaint alleges that weekly calls took place between Soporex and CCI representatives – but the Complaint does not allege where these calls originated or were received or who was on the calls for either party. Lastly, the Complaint alleges that in November of 2007, CCI representatives (the only individual specifically identified is someone other than Festa) met with Soporex in Texas and acknowledged that CCI and CCN had misrepresented their ability to staff the Soporex accounts and gave assurances that corrective action would be taken.  In connection with her arguments with respect to the accrual of the cause of action for statute of limitations purposes, the Trustee contends that her causes of action against Festa accrued when Soporex first learned of Festa's negligent conduct at this meeting in Dallas.  Thus, the situs of this conduct is most significant as to the Trustee's claims against Festa.

With respect to the Group Defendants, the Complaint simply asserts that the "Defendants, including the officers and employees of each that worked on the Soporex account, negligently performed the billing services," *Compl.* ¶ 15, "CCN and Carecentric continued to experience problems with the billing and collection of . . . claims," *Compl.* ¶ 33, and their "failure to correct these front-end errors and to perform timely follow-up on all unpaid claims resulted in significant losses to Soporex." *Compl.* ¶ 35. The Trustee does not allege where this conduct occurred. Thus, the Court is unable to conclusively determine whether this factor favors the application of Texas law, Georgia law, or the law of some other state.[14]

### (iii) *The Domicile, Residence, Place of Incorporation and Place of Business of the Parties*

With respect to the claims against Festa, the parties do not dispute that (1) Inc. and Respiratory are Delaware corporations, (2) Respiratory had its principal place of business in Kentucky, (3) Inc., the corporate parent and contracting party, maintained its headquarters in Texas., and (4) Festa is a resident of Georgia and until November 2007, was President and CEO of CCI, a Georgia corporation with its principal place of business in Georgia. However, CCI is neither the contracting party nor the entity that performed services under the Contract. Festa is not alleged to have any relationship with CCN (the contracting party from which performance was due), other than in his capacity as President and CEO of its corporate parent, CCI. As between the plaintiffs and Festa, the Court concludes that the plaintiff's places of business are the most important contacts. Where the loss alleged is a financial one, the location of the plaintiff is more important than that of

---

[14] The Court notes that the Trustee does allege that both CCI and CCN maintain their principal places of business in Georgia. She also alleges, however, that CCI maintains a billing facility in Pennsylvania. *Compl.* ¶ 30. The Complaint does not clearly allege where the billing services were performed. Thus, the injury-causing conduct could have occurred in Georgia, or it could have occurred in Pennsylvania

the defendant, "as the financial loss involved will usually be of greatest concern there." *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 356 (Tex. App. – Houston [14th Dist.], 2003). Here, as noted above, one of the plaintiffs appears to be in Texas, and the other in Kentucky. For the reasons stated above, the Court presumes their law to be the same, and thus the choice between them is not dispositive of the choice-of-law analysis. This factor clearly points away from Georgia.

With respect to the claims against the Group Defendants, the Court notes that CCN and CCI are Georgia corporations with their principal place of business in Georgia. Mestek is a Pennsylvania corporation with a principal place of business in Massachusetts. Reed is a Massachusetts resident; Newkirk and Capasso are Georgia residents, and Shea and Olearcek are Connecticut residents. There are thus contacts with six different states, and the parties have only argued for the application of either Georgia or Texas law. Again, the Court concludes that the plaintiffs' places of business are the most important contacts, because where the loss is financial, the location of the plaintiff is most important. *Id*. And, as noted above, one of the plaintiffs appears to be in Texas, and the other in Kentucky. For the reasons stated above, the Court presumes their law to be the same, and thus the choice between them is not dispositive of the choice-of-law analysis. This factor clearly points away from Georgia.

### (iv) *Where the Relationship Is Centered*.

This factor is not determinative where the Court is unable to conclude that the relationship is centered in any single state because there are minimal contacts with several states. *Flynn v. Mazda Motors of America*, No. 4:09CV2069 HEA, 2010 WL 2775632 (E.D. Mo. July 14, 2010). This factor is also not determinative when the relationship between the parties is not "centered" in a particular location, *Carideo v. Dell, Inc.*, 706 F.Supp.2d 1122 (W.D. Wash. 2010), or where the

parties did not have a relationship independent of the subject of the action. *Sico North America, Inc. v. Willis*, No. 14-08-00158-CV, 2009 WL 3365856 (Tex. App. – Houston [14th Dist.] Sept. 10, 2009). Here, the Complaint alleges that Festa has a relationship with CCI, which is the corporate parent of the contracting party CCN, and not with Soporex. That was the only relationship that existed prior to the allegedly tortious conduct. Thus, the Court concludes that this factor is neutral.

With respect to the Group Defendants, the Court is unable to determine where the relationship was "centered," because the Complaint does not allege where the services that were allegedly negligently performed were provided, or where the Contract (which formed the basis of their relationship) was negotiated, executed, or performed. Thus, the Court concludes that this factor is neutral and does not point strongly to either Georgia or Texas or, for that matter, to any other state.

Accordingly, the Court concludes that on balance on the present record, the analysis of the factors set forth in the Restatement point away from Georgia, and favor the application of Texas law (or Kentucky law, which is presumed to be the same). Texas is where the injury occurred and where Inc. (the contracting party) conducts its business. The Trustee has not specifically alleged any negligent conduct by Festa outside of Texas, and does not clearly allege where the negligent conduct by any of the Group Defendants occurred. The Trustee has not cited a single case in support of her argument that Georgia law should apply. Therefore, the Court concludes that Texas law should govern the analysis of the existence of a duty and the application of the economic loss rule.

### b.    *The Negligent Misrepresentation Claim*

Section 148(2) of the Restatement states that:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most

significant relationship to the occurrence and the parties:
>(a) the place, or places, where the plaintiff acted in reliance upon the
>defendant's representations,
>(b) the place where the plaintiff received the representations,
>(c) the place where the defendant made the representations,
>(d) the domicile, residence, nationality, place of incorporation and
>place of business of the parties,
>(e) the place where a tangible thing which is the subject of the
>transaction between the parties was situated at the time, and
>(f) the place where the plaintiff is to render performance under a
>contract which he has been induced to enter by the false
>representations of the defendant.

Here, the last two factors do not aid the Court's analysis, since a "tangible thing" is not the subject of the Trustee's claims, and the Trustee does not assert a fraudulent inducement claim. Accordingly, the Court will focus its analysis on the first four factors listed above.

As noted earlier, the Trustee has clarified in her briefing that this claim is asserted only by Respiratory. Respiratory presumably acted in reliance upon the alleged misrepresentations in Kentucky. Although the Complaint is not clear, some of the misrepresentations may have occurred in Georgia, some in Kentucky, and/or some in Pennsylvania, and they may have been received in those states, as well. Specifically, paragraph 22 of the Complaint alleges that during a meeting to discuss the initial Contract, Festa and Newkirk represented that CCN had the ability to service Respiratory's accounts, but the Complaint does not allege where this meeting took place. Similarly paragraphs 26, 31, and 35 allege misrepresentations, but do not allege where they were made. Paragraph 29 alleges a misrepresentation by Capasso in Georgia, and paragraph 30 alleges a misrepresentation in Pennsylvania but does not specify which defendant made the statement. Paragraph 36 alleges misrepresentations in Texas. The Trustee has not offered any explanation as to why Georgia, as opposed to either Texas, Kentucky, or Pennsylvania would have any greater interest in regulating the conduct of its citizens. The Complaint does not allege any specific

misrepresentations made by Festa individually. To the extent that Festa (a Georgia resident) is included within the Trustee's allegations as to "the Defendants," the Complaint is unclear as to where those misrepresentations were made.

Therefore, there are contacts with several states. The place where the defendant made misrepresentations and the place where the plaintiff received them "are of equal importance, but both are outweighed by the place where the plaintiff acted in reliance." *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 356 (Tex. App. – Houston [14th Dist.], 2003). While the reliance factor may weigh in favor of Kentucky law as opposed to Texas law, it certainly points away from Georgia, the forum supported by the Trustee. In addition, no party has argued for the application of Kentucky law, and the Trustee, who is the party asserting that the forum's (here, Texas's) law should not apply has not shown a conflict between Kentucky law and Texas law. Because at least some of the representations were received in Texas and directed at Texas, the Court concludes that Texas law, rather than Georgia law, should apply.

### c.   *The Conversion Claim*

None of the parties have specifically addressed the conflict-of-law question with respect to the conversion claim. The conversion claim is not asserted against Festa. The Group Defendants have raised two issues with respect to the conversion claim – *i.e.*, (1) whether the claim is barred by the statute of limitations, and (2) whether the Trustee is permitted to recover any damages in excess of $2,198,409.43 because section 7 of the Contract contains a "limitation of liability" clause.

First, as noted earlier, Texas would nonetheless apply its own statute of limitations. Therefore, Texas law will govern the application of the statute of limitations. And, as noted earlier, the burden is on the party asserting application of foreign law to show the existence of a true conflict

of laws, and then demonstrate which law should apply. *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56 (Tex. App. – Houston [14th Dist.], 2004). Here, the Trustee has not clearly argued, no less established, that application of the law of any state other than Texas is appropriate. Therefore, the Court concludes that Texas law should govern the analysis of the Trustee's conversion claim and whether it is precluded in part by section 7 of the Contract.

### d. *The Breach of Contract Claim*

As a threshold matter, the Trustee concedes that the breach of contract claim is asserted only by Inc., and not Respiratory. Accordingly, to the extent the Complaint attempts to plead a breach of contract claim on behalf of Respiratory, that cause of action is dismissed.

The Contract contains a choice of law provision which states that "[t]his Agreement shall be governed by and construed under the laws of the State of Georgia, excluding its laws concerning conflicts of law." Such clauses are enforceable under both Texas and Georgia law, and the Trustee does not contend otherwise. *Global Octanes Texas, L.P. v. BP Exploration & Oil Inc.*, 154 F.3d 518 (5th Cir. 1998), *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572 (Tex. 1991); *Bergholtz v. Southwestern Bell Yellow Pages, Inc.*, 324 S.W.3d 195 (Tex. App. – El Paso, 2010). Thus, there is no conflict of law, and the parties' choice of law will govern. Therefore, all questions respecting the interpretation of the Contract and its limitation of liability clause are governed by Georgia law. **C.** *Application of the Law to the Trustee's Claims*

### 1. *The Standard under Rule 12(b)(6)*

Fed. R. Civ. P. 12(b)(6)[15] permits a party to request that a complaint be dismissed for its

---

[15] Federal Rule of Civil Procedure 12(b)(6) applies here by virtue of Federal Rule of Bankruptcy Procedure 7012.

**Memorandum Opinion and Order**                                                                                   **21**

failure to state a claim upon which relief can be granted. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 318 (5th Cir. 2009); *McCall v. Southwest Airlines Co.*, 661 F. Supp. 2d 647, 653 (N.D. Tex. 2009). A plaintiff must allege enough facts to state a claim for relief that is "plausible" on its face. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. This plausibility standard is not a probability requirement, but does require more than mere possibility. If a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Moreover, "a court is not to strain to find inferences favorable to the plaintiff and is not to accept [as true] conclusory allegations, unwarranted deductions, or legal conclusions." *St. Paul Commodities, LLC v. DB Fleet, LLC,* No. 3:09-CV-582-L, 2009 WL 3378598, at *2 (N.D. Tex. Oct. 21, 2009) (citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)). The Supreme Court held in *Iqbal* that the "plausibility" standard articulated in *Twombly* applies in all civil cases. *Morgan v. Hubert*, 335 Fed. Appx. 466 (5th Cir. 2009) (discussing *Iqbal*).

The Supreme Court has set out a two-pronged approach for reviewing a motion to dismiss for failure to state a claim. *Iqbal,* 129 S. Ct. at 1949-50; *McCall*, 661 F. Supp. 2d at 653. First, the

reviewing court may identify those statements in a complaint that are actually conclusions, even if presented as factual allegations. *Iqbal*, 129 S. Ct. at 1949-50; *McCall*, 661 F. Supp. 2d at 653. Such conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. *Iqbal*, 129 S. Ct. at 1949-50; *McCall*, 661 F. Supp. 2d at 653. It is the conclusory nature of the statements rather than any fanciful or nonsensical nature "that disentitles them to the presumption of truth." *Iqbal*, 129 S. Ct. at 1951; *McCall*, 661 F. Supp. 2d at 653. Second, the reviewing court presumes the truth of any remaining "well-pled factual allegations," and determines whether these factual allegations and their reasonable inferences plausibly support a claim for relief. *Iqbal*, 129 S. Ct. at 1950; *McCall*, 661 F. Supp. 2d at 653.

As a threshold matter, the Court notes that the Trustee has conceded that "under Texas law, the negligence cause of action cannot be sustained . . . ." *Pltf's Supp. Brief in Resp. To Defs' Motions to Dismiss*, p. 2. Accordingly, Count 2 of the Complaint, asserted by both plaintiffs against all defendants, is dismissed. The Trustee has also conceded that her claims for negligent misrepresentation and conversion are asserted by Respiratory only, and not by Inc. *Pltf's Supp. Br. In Resp. To Defs' Mot. To Dismiss*, p. 2. The negligent misrepresentation and conversion claims, to the extent originally asserted by Inc., are therefore dismissed as to all defendants. Thus, the Court need only address the Festa Motion as it relates to the negligent misrepresentation and attorney's fee claims asserted by Respiratory against Festa, and the Group Defendants' Motion as it relates to (1) the negligent misrepresentation and attorney's fee claims asserted by Respiratory against CCI, Mestek, Reed, Newkirk, Capasso, Shea and Olearcek,[16] (2) the conversion and attorney's fee claims

---

[16] The Trustee concedes that her negligent misrepresentation claim is not asserted against the contracting party, CCN. *Pltf's Resp. To Defs. Carecentric National LLC, Carecentric, Inc., Mestek, Inc., Steward B. Reed, Lyle W. Newkirk, Ralph Capasso, Stephen M. Shea and Steven F. Olearcek's Mot. To Dism. And Br. In Supp.*

**Memorandum Opinion and Order**                                                              23

asserted by Respiratory against CCN, Mestek, Reed, Capasso, Shea and Olearcek,[17] (3) the cause of action relating to the Trustee's objection to CCN's proofs of claim,[18] and (4) the breach of contract claim asserted by Inc. against CCN.[19]

## 2.    *The Statute of Limitations*

While the existence of a limitations bar is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), a motion under Rule 12(b)(6) may properly raise this issue at the pleadings stage. *Jones v. Alcoa, Inc.*, 339 F.3d 359 (5th Cir. 2003). A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show that the plaintiff is not entitled to relief. If the allegations "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense." *Jones v. Bock*, 549 U.S. 199 (2007).

The parties agree that under Texas law, both a negligent misrepresentation claim and a conversion claim are governed by a 2-year limitations period. The parties also agree that generally, a cause of action accrues once the wrongful act causes an injury and the limitations period begins to run when the fact of injury is known. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515 (Tex. 1988).

---

(*"Pltf's Resp."*) p. 2, ¶ 1.

[17] As pled in the Complaint, the conversion claim is not asserted against Newkirk. While the conversion claim is asserted by Respiratory against CCI, CCI has not moved to dismiss.

[18] Although Count 5 of the Complaint does not differentiate between Inc. and Respiratory and refers only to "Soporex," the Court notes that CCN did not file a claim in Respiratory's case, and thus the Court assumes that Count 5 is asserted only on Inc.'s behalf.

[19] The Trustee concedes that the breach of contract claim is not asserted on behalf of Respiratory.

**Memorandum Opinion and Order**                                                                                                    **24**

a.    *The Negligent Misrepresentation Claim*

Festa initially argued that the Trustee alleges that Festa was the representative of CCI only until November, 2007.  Similarly, the Group Defendants initially argued that the Trustee alleges that as of November 27, 2007, the date of the meeting between Soporex and CCN at which CCN allegedly admitted to its misrepresentations, Soporex was aware of the misrepresentations.  Because the Complaint was filed on May 5, 2010, Festa asserts that the claim is barred.  The Trustee, quite correctly, responded that 11 U.S.C. § 108 provides an extension of the statute of limitations in certain circumstances.  Section 108(a) provides:

> If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of –
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> > (2) two years after the order for relief.

The Debtors filed their petitions for relief under Chapter 7 on August 22, 2008.  Therefore, the Trustee asserted that she had until August 22, 2010 to file her Complaint, and since the Complaint was filed on May 5, 2010, her claim is timely asserted.[20]  Festa and the Group Defendants responded that section 108 provides the Trustee no comfort on a claim as to which the statute of limitations expired prior to August 22, 2008 which, of course, is true under the Bankruptcy Code.  Accordingly, at this point, the focus of the parties' dispute shifted in their briefing to the timing of the accrual of the claim.

---

[20] The Trustee initially asserted that Georgia law provides the applicable statute of limitations, and Georgia's statute of limitations is four years.  The Court has concluded, for the reasons set forth above, that Texas supplies the appropriate statute of limitations.  The Trustee argues, however, that in light of section 108, her claims are timely under even Texas's statute of limitations.

The purpose of a statute of limitations is to establish a point of repose and to terminate stale claims. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). The interest in repose is based on the theory that "the uncertainty and insecurity caused by unsettled claims hinder the flow of commerce." *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). The desire to eliminate stale claims is premised upon the notion that claims should be asserted within a reasonable time "while the evidence is fresh in the minds of the parties and witnesses." *Id.* The statute of limitations commences running when a cause of action accrues. The rule in Texas respecting the accrual of a cause of action has long been that

> when an act is in itself lawful as to the person who bases an action on injuries subsequently accruing from, and consequent upon, the act, it is held that the cause of action does not accrue until the injury is sustained . . . If, however, the act of which the injury was the natural sequence was a legal injury, – by which is meant an injury giving a cause of action by reason of its being an invasion of a plaintiff's right, – then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar.

*Quinn v. Press*, 140 S.W.2d 438, 440 (Tex. 1940) (superceded by statute on other grounds) (quoting *Houston WaterWorks v. Kennedy*, 70 Tex. 233 (1888)); *Waxler v. Household Credit Servs., Inc.*, 106 S.W.3d 277 (Tex. App. – Dallas, 2003) (noting that if the act complained of is itself a legal injury to the plaintiff, the wrong is "completed" and the cause of action accrues from the time the act is committed; conversely, if the act is not itself unlawful and the plaintiff sues to recover damages, the cause of action accrues when, and only when, the damages are sustained). For statute of limitations purposes, a cause of action generally accrues at the time when facts come into existence that authorize a claimant to seek a judicial remedy. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998); *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.

1990); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206 (Tex. App. – Houston [14th Dist.], 2008).

Causes of action for fraud, *Quinn,* 140 S.W.2d 438 at 440, negligence, *Waxler v. Household Credit Servs., Inc.*, 106 S.W.3d 277 (Tex. App. – Dallas, 2003), and negligent misrepresentation, *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380 (5th Cir. 2007), accrue at the time of the wrongful act. Limitations begin to run when the misrepresentations are made and when some legal injury occurs. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515 (Tex. 1988). This is so even if the fact of injury is not discovered until later, and even if all resulting damages haven't yet occurred. *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008)*; Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380 (5th Cir. 2007);*Childs v. Haussecker*, 974 S.W.2d 31 (Tex. 1998); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206 (Tex. App. – Houston [14th Dist.], 2008). Moreover, the fact that damage may continue to occur for an extended period does not prevent limitations from starting to run. *In re Sunpoint Securites, Inc.*, 377 B.R. 513 (Bankr. E.D. Tex. 2007).

The Trustee argues that under Texas common law, the accrual date of a cause of action is determined by the "legal injury rule," pursuant to which a cause of action accrues and the statute of limitations begins to run when the plaintiff sustains a legal injury as a consequence of the defendant's wrongful act, and the law affords a remedy. *Childs v. Haussecker*, 974 S.W.2d 31 (Tex. 1998). The Trustee points out that CCN's work did not begin until April, 2006. While the Trustee contends that the misrepresentations occurred throughout the parties' relationship, she also claims that the causes of action cannot accrue until there is actionable injury. Citing *Waxler v. Household Credit. Servs.* 406 S.W.3d 277 (Tex. App. – Dallas, 2003)*,* the Trustee argues that Respiratory did not sustain an economic loss until it wrote off, in 2007, the accounts receivable it was unable to collect as a consequence of CCN's failure to perform and the negligent misrepresentations.

**Memorandum Opinion and Order**                                                                 **27**

Festa and the Group Defendants assert that Trustee's interpretation of the legal injury rule would allow a party to extend indefinitely the accrual of a claim, simply by delaying the write-off of debt. Festa and the Group Defendants assert instead that the Trustee's claim here accrued as soon as the injury was suffered, not when all of Respiratory's damages were realized, and certainly not when Respiratory wrote off the debt. Festa and the Group Defendants assert that the injury alleged by the Trustee is the failure to receive payments on its medical claims due to the allegedly negligent misrepresentations that, according to the Trustee, kept Soporex from intervening to correct CCN's billing problems. Festa and the Group Defendants assert, citing paragraphs 17 and 26 of the Complaint, that the Complaint makes clear that as soon as the Letter of Understanding was signed on March 3, 2006, Festa's alleged misrepresentations began causing injury.[21]

Mindful that the Complaint should only be dismissed at the pleadings stage if the allegations of the Complaint, as they appear on its face, show that the Trustee's claims are barred by limitations, *Jones v. Bock*, 549 U.S. 199 (2007), the Court concludes that the Complaint should not be dismissed at this juncture. Initially, the Court agrees with Festa and the Group Defendants that allowing the Trustee to defer the running of limitations by simply delaying the write-off of debt would eviscerate the policies underlying the statute of limitations and impermissibly place its commencement within the voluntary control of a plaintiff. Morever, the Court notes that while the Trustee asserts in *her*

---

[21] Festa correctly notes that the Complaint lumps "the Defendants" and "the Individual Defendants" (which is defined to include Festa) together in many instances. The Complaint is also not specific as to who, in particular, made representations or when they were made. For example, paragraph 16 of the Complaint alleges that "the Individual Defendants repeatedly assured Soporex that CCN and CareCentric were capable of performing the billing services for Soporex, that an adequate number of trained staff were working on the Soporex account, and that billing errors were being timely corrected and resubmitted to Medicare, Medicaid, and private insurance for billing."

*brief* that the debt was not written off until 2007, that allegation does not appear *in the Complaint*.[22]

Conversely, the Court does not find that the allegations of paragraphs 17 and 26 show that the injury occurred prior to August of 2006. Paragraphs 16 and 17 together allege that the Individual Defendants made misprestations in the form of "repeatedly assur[ing] Soporex that CCN and CareCentric were capable" of performing billings, that adequate staff were working on Soporex's accounts and that billing errors were being fixed and claims were being re-submitted, but that billing errors were not being fixed, "which caused a continuing and steady decline in Soporex's collectible accounts." *Compl.* ¶¶ 16, 17. Paragraph 26 alleges that CCN began its billing services in April, 2006, and "from the inception of the . . . relationship, . . . the Individual Defendants made material and negligent statements . . . concerning the nature of the billing and collection problems that were being encountered and CCN's or Carecentric's ability to correct these problems." However, the Trustee also alleges that Soporex did not hire Teresa Camfield ("Camfield") to oversee CCN's work until the fall of 2006, ¶ 27, that Camfield did not provide the list of billing deficiencies to CCN until November of 2006, ¶ 28, and that CCN did not misrepresent the number of CCN employees working on the Soporex accounts until November of 2006 and March of 2007. *Compl.* ¶¶ 29, 30. The Trustee further alleges that Camfield held weekly meeting with CCN beginning in the fall of 2006, ¶ 34, at

---

[22] Further, the case the Trustee cites for the proposition that the cause of action did not accrue until the Trustee wrote off the uncollectible accounts receivable, *Waxler v. Household Credit Services*, 106 S.W.3d 277 (Tex. App. – Dallas, 2003), does not support her position. In *Waxler*, a credit card holder sued the issuer of her credit card for negligence in mis-coding a payment, ultimately writing off her debt and issuing a negative credit report. The issuer argued that the legal injury occurred when the mis-coding occurred. The plaintiff argued that the legal injury occurred instead when the plaintiff was subsequently denied credit by a different bank based upon the negative credit report. The Court agreed with the plaintiff and held that the legal injury was the denial of credit. By analogy, the Trustee's claims here accrued when the accounts that CCN billed became uncollectible as a result of the erroneous billing, and not when the accounts were written off. However, the Complaint is not clear as to when the accounts became uncollectible.

which the parties discussed certain "front-end edit" reports that detailed claims that had been rejected by Medicare, and that the correction of errors described in those reports was essential to the collection of Medicare accounts. ¶ 35. The Trustee further alleges that the Defendants misrepresented "the work done to correct errors, resubmit claims and perform timely follow-up on denied claims." ¶ 35. By definition, these misrepresentations occurred sometime after the fall of 2006.

Accordingly, the Court concludes that when the allegations in the Complaint are taken as a whole and read in the light most favorable to the Trustee, the Trustee fairly alleges misrepresentations and legal injury occurring after August of 2006, less than two years prior to the filing of the bankruptcy cases. Thus, the Court concludes that the Complaint does not show on its face that the Trustee's negligent misrepresentation claim is barred by limitations because the limitations period had expired prior to the filing of Respitory's bankruptcy case.

### (i)    *The Discovery Rule*

Because the Court has concluded that the Complaint does not show on its face that the Trustee's claim is barred by limitations, the Court need not reach the parties' arguments respecting the "discovery rule," which can defer the accrual of a claim for limitations purposes. However, as an alternative ruling and to provide the parties with guidance in the event that the limitations issue is raised at a subsequent procedural juncture, the Court will address this alternative argument here.

The Trustee argues that the commencement of the statute of limitations is deferred by the "discovery rule." Texas's "discovery rule" defers a cause of action's accrual until the plaintiff knows, or by the exercise of reasonable diligence should know, of the facts giving rise to the claim. *Barker*

*v. Eckman*, 213 S.W.3d 306 (Tex. 2006).[23] Texas courts have viewed the discovery rule as a "very limited" exception to statutes of limitations, *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996), which is applied in "rare," *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998), or "exceptional" cases. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006). Texas courts apply the discovery rule "in those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assoc.*, 918 S.W.2d at 456. The phrase "inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where it is difficult for the injured party to learn of the negligent act or omission." *Id*. Requiring "objective verifiability assures that the policy underpinnings of statutes of limitations are met – balancing the possibility of stale or fraudulent claims against individual injustice." *Id*. at 457. "Restated, the general principle is this: accrual of a cause of action is deferred . . . in discovery rule cases in which the alleged wrongful act and the resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

To be inherently undiscoverable, an injury need not be impossible to discover. *Id.* at p. 7. Nor does it mean that a particular plaintiff did not discover his injury within the limitations period. *Id*. Instead, discovery of a particular injury is "dependent not solely on the nature of the injury but on the circumstances in which it occurred and plaintiff's diligence as well. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id*.

Moreover, the applicability of the discovery rule is determined categorically – the Court

---

[23] The Trustee concedes that it is her burden to plead and prove application of the discovery rule.

determines whether the discovery rule applies to particular types of cases rather than to a particular case. *Via Net v. TIG Ins. Co.*, 211 S.W.3d at 313; *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732 (Tex. 2001); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). The appropriate question is whether the type of injury alleged is one that is generally discoverable by the exercise of reasonable diligence. *Wagner & Brown, Ltd.*, 58 S.W.3d at 735.

Here, both parties agree that the discovery rule has, in certain circumstances, been applied in the context of a negligent misrepresentation claim. *In re Sunpoint Securities, Inc.*, 377 B.R. 513 (Bankr. E.D. Tex. 2007); *Sabine Towing & Transp. Co. v. Holliday Ins. Agency, Inc.*, 54 S.W.3d 57 (Tex. App. – Texarkana, 2001). However, the inquiry focuses on types of injury, not causes of action. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006).

The Trustee does not articulate why her injury was inherently undiscoverable, she simply asserts that the Complaint alleges that Soporex first learned of the negligent misrepresentations during a meeting between Soporex and CCI in November, 2007. *Compl.*, ¶ 36. This argument fails for two reasons. First, paragraph 36 does not allege that this was the *first* time Soporex learned of the misrepresentations – it simply alleges that at that meeting, at least one defendant admitted that "CareCentric and CCN had misrepresented their ability to adequately staff the Soporex account with trained personnel." Second, and more importantly, the fact of when Soporex actually learned of the misrepresentations is irrelevant. The application of the discovery rule depends not on when a particular plaintiff discovered the injury, but rather upon whether the injury is of a type that, by its nature, is unlikely to be discovered within the prescribed limitations despite due diligence. The Texas Supreme Court has specifically held that "inherently undiscoverable" does *not* mean that a particular plaintiff didn't discover his injury within the limitations period. *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.

1996).

Here, the Court concludes that the injury of which the Trustee complains was of a type discoverable within the limitations period by the exercise of reasonable diligence. The Trustee complains of several injuries resulting from the alleged negligent misrepresentations – *i.e.*, the Complaint alleges (1) that Soporex continued to do business with CCN and paid it fees under its contract, *Compl.*, ¶ 32, (2) that Soporex paid fees to Camfield, who was hired by Soporex in November of 2006 to "oversee CCN's and CareCentric's compliance with the procedures for billing," *Compl.* ¶¶ 27, 59, (3) that Soporex experienced a "steady and significant rise in its uncollected Medicare, Medicaid, private insurance, and other payor accounts", *Compl.* ¶ 33, and (4) that Soporex experienced a significant loss of revenue that ultimately caused the Soporex entities to file for bankruptcy relief. *Compl.* ¶ 59. All of this injury was discoverable with reasonable diligence. Surely, Soporex should have been able to ascertain that its claims were being rejected, its uncollected accounts receivable were rising and its revenue was declining. In fact, the Complaint alleges that Soporex was aware of problems with the collection activities of CCI and CCN in the fall of 2006, and for this reason, it hired Camfield to oversee their efforts. *Compl.* ¶ 27. There is simply no basis – and the Trustee essentially argues none – for the Court to conclude that these types of injury are undiscoverable. It is certainly not uncommon or unexpected for a business to monitor its own financial condition.

Accordingly, the Court concludes, in the alternative to its conclusion that the Complaint does not show on its face that the Trustee's claim for negligent misrepresentation is barred by limitations, that the discovery rule does not apply to defer the accrual of the Trustee's claim.

If, however, the discovery rule applied here, the Court would conclude that the Complaint

fairly alleges that "Soporex" did not discover the allegedly tortious conduct until the fall of 2006.

While the Trustee asserts, citing paragraph 36 of the Complaint, that she alleges that Soporex first

learned of the defendants' negligent misrepresentations during a meeting with CCI representatives

on November 27, 2007, the Court disagrees.  Paragraph 36 states, in part:

> On November 27, 2007, Carecentric representatives . . . met with Soporex's
> management in Dallas to discuss the billing and collection problems.  At his meeting,
> Defendant Reed admitted to CCN's and CareCentric's negligence in the performance
> of the Agreement.  Defendant Reed also acknowledged that CareCentric and CCN
> had misrepresented their ability to adequately staff the Soporex account with trained
> personnel.  At this meeting Defendant Reed gave the Soporex representatives
> assurances that appropriate corrective action would be taken by CareCentric.

*Compl.*, ¶ 36.  However, paragraph 36 does not state, as the Trustee suggests, that Soporex *first*

learned of the offending conduct at the November 27, 2007 meeting.  It simply states that at that

meeting, Reed allegedly admitted to negligence and misrepresentations by CCN and/or CCI.

Moreover, it does not state that "Soporex" was unaware of this alleged conduct prior to that

admission. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990) (holding that cause

of action against insurer for breach of duty of good faith and fair dealing did not accrue when the

insurer admitted to wrongful denial of coverage, because if insurer had never admitted coverage,

limitations would never begin to run).

Similarly, Festa and the Group Defendants argue, citing paragraphs 15 and 26 of the

Complaint, that the Trustee alleges that the injury occurred much earlier, and that Soporex was aware

of it.  Again, the Court disagrees.  Paragraph 15 alleges:

> CCN breached this contract and through its nearly two-year contractual relationship
> with Soporex, the Defendants, including the officers and employees of each that
> worked on the Soporex account, negligently performed the billing services.  The
> Defendants' negligence proximately caused damages to Soporex, including
> outstanding and uncollectibe accounts receivable.

Paragraph 26 alleges:

> On April 1, 2006, CareCentric and/or CCN began providing the billing services called for under the Letter of Understanding. Shortly after CareCentric and/or CCN began providing these billing services, Soporex identified and reported to CareCentric employees numerous problems with the billing services being provided, as well as deficiencies in the MestaMed and PharmMed software systems. From the inception of the contractual relationship, one or more of the Individual Defendants made material and negligent statements to Soporex's representatives concerning the nature of the billing and collection problems that were being encountered and CCN's or CareCentric's ability to correct these problems.

Festa and the Group Defendants argue, selectively citing from these two paragraphs, that the Trustee alleges that as of April 1, 2006, Soporex had positively identified and reported problems with the software and billing, so the injury was "admittedly evident" more than two years prior to the bankruptcy filing in 2008. *John R. Festa's Reply in Supp. of his Mot. To Dismiss*, pp. 7-8; *Reply Br. Of Defs. Carecentric National, LLC, Carecentric, Inc., Mestek Inc., Stewart B. Reed, Lyle W. Newkirk, Ralph Capasso, Stephen M. Shea, and Steven F. Olearcek in Supp. Of Their Mot. To Dismiss*, p. 7. However, paragraphs 15 and 26 of the Complaint do not state, when read as a whole, that "Soporex" was aware of the allegedly offending conduct as early as the very inception of the contractual relationship. Instead, the Trustee alleges that there were billing problems from the inception of the relationship, and that shortly after CCN began its work, "Soporex" identified to CCN problems with their billing services and software. She further alleges that the misrepresentations began at the inception of the relationship. However, paragraph 16 of the Complaint makes clear that the Trustee complains not that billing problems initially occurred; rather, the Trustee complains that when the billing problems were brought to CCN's attention, CCN falsely said that they were being corrected and that CCN had the ability to correct them. Paragraphs 34 and 35 of the Complaint allege that in the Fall of 2006, Soporex began having weekly calls with CCN to discussed rejected

claims, and that the defendants misrepresented the work that was being done to correct errors and to resubmit claims. In addition, paragraph 18 of the Complaint alleges that when Soporex discovered the failures to correct the billing problems, it began to take steps to move the billing functions away from CCN. Paragraph 37 of the Complaint puts the time frame of these steps at "late 2007."

Accordingly, the Court finds that the Complaint, when read as a whole, plausibly alleges that Soporex discovered the conduct of which it complains at some point after the fall of 2006 which, of course, is less than two years prior to the Debtors' bankruptcy filings, such that the statute of limitations had not run at the time of the bankruptcy filing. Therefore, if the discovery rule applied, the Court believes that the Complaint fairly alleges that Soporex did not discover the injury until at least the fall of 2006 which, of course, is within the two years preceding the filing of the relevant bankruptcy case. Accordingly, if the discovery rule applies, the Court concludes that the statute of limitations had not expired as of the petition date, and thus was properly tolled by section 108 of the Bankruptcy Code such that the Complaint was timely filed.

### (ii)     The Continuing Tort Doctrine

Similarly, and because the Court has concluded that the Complaint does not show on its face that the Trustee's claim is barred by limitations, the Court need not reach the parties' arguments respecting Texas's "continuing tort" doctrine, which can defer the accrual of a claim for limitations purposes. However, as an alternative ruling and to provide the parties with guidance in the event that the limitations issues is raised at a subsequent procedural juncture, the Court will address this alternative argument here.

The Trustee argues that the "continuing tort" doctrine is an exception to the legal injury rule, and that under that doctrine, the cause of action accrues only when the tort stops. A continuing tort

is a repeated injury proximately caused by repetitive wrongful acts. *Krohn v. Marcus Cable Assoc., L.P.,* 201 S.W.3d 876 (Tex. App. – Waco, 2006). The Trustee argues that Festa's wrongful acts – *i.e.*, his misrepresentations, did not stop until Festa's employment with CCI ended in November, 2007.

The Court agrees with Festa, however, that this argument is not supported by any allegations in the Complaint. Instead, the Complaint simply alleges that Festa was the President and CEO of CCI until November, 2007. *Compl.* ¶ 8. Festa is only specifically identified as making one misrepresentation to Soporex. Compl, ¶ 22 (Festa represented in March 2006 that "CCN could provide the billing services required for Soporex's business operations"). For this reason alone, the Court concludes that the continuing tort doctrine does not apply. However, even to the extent that the Trustee intended to include Festa in the more general allegations, lumped together in the Complaint as being made by the "Defendants" or the "Individual Defendants" (which term is defined to include Festa), the Court still concludes that the continuing tort doctrine does not apply.

The Texas Supreme Court has "neither endorsed nor addressed" the doctrine. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.8 (Tex. 2005); *Patel v. United States*, No. 09-10375, 2010 WL 3988330 (5th Cir. Oct. 12, 2010). However, some courts of appeals have applied the doctrine in Texas. The doctrine applies to tortious acts that are inflicted over a period of time and repeated until desisted, and each day creates a separate cause of action. *Marty's Food & Wine, Inc. v. Starbucks Corp.*, No. 05-01-00008-CV, 2002 WL 31410923 (Tex. App. – Dallas, Oct. 28, 2002); *Corpus Christi Nat. Bank v. Garner*, No. 13-01-005-CV, 2002 WL 34215940 (Tex. App. – Corpus Christi, Oct. 10, 2002). In such a case, a cause of action for the continuing tort does not accrue until that tortious act ceases. *Marty's Food & Wine, Inc.*, 2002 WL 31410923 at *6. In a continuing tort

case, the offending conduct is repeated day by day, and it has most typically been applied to cases involving nuisance, trespass, and false imprisonment. *Tavana v. GTE Southwest, Inc.*, No. 05-97-00664-CV,1999 WL 512624 (Tex. App. – Dallas, July 21, 1999); *Jim Arnold Corp. v. Bishop*, 928 S.W.2d 761 (Tex. App. – Beaumont, 1996). The doctrine is "rooted in a plaintiff's ability to know that the ongoing conduct is causing him injury. When a plaintiff discovers his injury and its cause, then the rationale for extending the accrual date no longer applies, and the limitations period begins to run with his discovery. *Corpus Christi Nat. Bank v. Garner*, No. 13-01-005-CV, 2002 WL 34215940 at *3 (Tex. App. – Corpus Christi, Oct. 10, 2002); *Hair v. Pillsbury Co.*, No. 05-01-01354-CV, 2002 WL 1494922 (Tex. App. – Dallas, July 15, 2002).

Here, the Trustee does not allege the type of tortious conduct for which the continuing tort doctrine applies. As noted by one court, "we find no Texas case law . . . that has applied the continuing tort doctrine to a negligent misrepresentation claim." *Corpus Christi Natl' Bank,* 2002 WL 34215940 at *3. Moreover, for the same reasons set forth above, the Court concludes that the Complaint fairly alleges that Soporex was aware of its injuries and the alleged cause of those injuries within the limitations period, as it hired Camfield to monitor CCI's collection of its accounts receivable despite the alleged misrepresentations that CCI could properly handle the accounts, was adequately staffed, and was re-billing rejected claims. Therefore, the Court does not believe that the continuing tort doctrine properly applies here.

### b. *The Conversion Claim*

The Group Defendants initially asserted that since the Complaint alleges that the conversion took place on February 8, 2008 (*Compl.*, ¶ 36), and the Complaint was not filed until May, 2010, it is time-barred. However, as the Trustee correctly notes, section 108 of the Bankruptcy Code tolls

the statute of limitations as to claims that had not expired on the date of the bankruptcy filing, and the Group Defendants failed to take section 108 into account in their opening brief. The parties do not dispute that Texas uses a 2-year statute of limitations for conversion claims. As the parties also agree that the conversion cause of action accrued in February, 2008, it had not expired at the time of the bankruptcy filing in August, 2008.

The Group Defendants appear to have abandoned their statute of limitations argument in their supplemental briefing, and to the extent they have not done so, the Court concludes that dismissal on this ground is not warranted, as the Complaint does not show on its face that the conversion claim is barred by limitations after consideration of section 108 of the Bankruptcy Code.

### 3. *Failure to Allege Duty*

Festa and the Group Defendants have also moved to dismiss the Trustee's negligent misrepresentation claim on the ground that the Trustee has failed to allege a duty owed by them to Soporex. Texas courts have looked to section 552 of the Restatement (Second) of Torts (the "Torts Restatement") to define the scope of duty for a negligent misrepresentation claim.[24] *Fed. Land Bank Assoc. of Tyler v. Sloane*, 825 S.W.2d 439 (Tex. 1991); *First Nat. Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802 (5th Cir. 1998). Section 552 provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

---

[24] Some lower court cases in Texas previously determined the scope of duty by considering such factors as (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the closeness of the connection between the defendant's conduct and the injury suffered, and (4) the potential liability. *See, e.g., Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231 (Tex. App. – Dallas, 1985). However, as noted by the court in *In re Sunpoint Securities, Inc.*, 377 B.R. 513 (Bankr. E.D. Tex. 2007), Texas has since rejected a foreseeability standard in favor of the Torts Restatement approach.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

The duty to "avoid making a negligent misrepresentation is separate from any other duty that may exist between the parties and can arise even if the parties' relationship would otherwise preclude a duty." *Jeffries v. Pat A. Madison, Inc.*, 269 S.W.3d 689, 691 (Tex. App. – Eastland, 2008); *see also Safeway Managing Gen'l Agency, Inc. v. Clark & Gamble*, 985 S.W.2d 166, 169 (Tex. App. – San Antonio, 1998) ("under a negligent misrepresentation theory, liability . . . is based on an independent duty to avoid misstatements intended to induce reliance"). The elements of a claim for such a negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Assoc. of Tyler*, 825 S.W.2d at 442.; *CCE, Inc. v. PBS&J Const. Servs., Inc.*, No. 01-09-00040-CV, 2011 WL 345900 (Tex. App. – Houston [1st Dist.], Jan. 28, 2011).

Festa and the Group Defendants argue that the Trustee fails to allege a duty running to Soporex from them for several reasons. First, Festa and the Group Defendants argue that individual liability on the part of an officer or agent of a corporation only arises where there is an independent

duty of reasonable care to the injured party, apart from the employer's duty. Festa and the Group Defendants further argue that while Texas may allow claims against officers in cases of actual fraud or intentional misrepresentation, Texas courts have not allowed such claims in the case of a negligent misrepresentation.

The Court disagrees. As noted above, Texas courts have looked to section 552 of the Torts Restatement to define the scope of a duty. Under section 552, a duty exists where a defendant, *in the course of his business, profession, or employment*, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in the business transactions if he fails to exercise reasonable care or competence communicating the information. Section 552 explicitly permits a duty to be imposed on a defendant communicating false information in the course of his employment. The cases cited by Festa and the Group Defendants are either distinguishable, as they involve claims for *negligence*, not *negligent misrepresentation*, and thus do not construe section 552, or they do not support their arguments. *Morrow v. Wyeth*, No. Civ. A. B-05-209, 2005 WL 2621555 (S.D. Tex. Oct. 13, 2005) was a negligence case against a drug manufacturer and its sales representative. *F.E. Appling Interests v. McCamish, Martin, Brown & Loeffler*, 953 S.W.2d 405 (Tex. App. – Texarkana, 1997), *aff'd* 991 S.W.2d 787 (Tex. 1999) actually recognized that a negligent misrepresentation claim could lie against an attorney because there *was* an independent duty under section 552, and *McCamish* was not an employee/employer or agency case at all. Similarly, *Kingston v. Helm*, 82 S.W.3d 755 (Tex. App. – Corpus Christi, 2002) held that a purchaser of a home was not required to pierce the corporate veil in order to hold the homebuilder's president individually liable on a negligent misrepresentation claim. The *Kingston* court actually distinguished another case cited by Festa and the Group Defendants, *Leitch v. Hornsby*, 935 S.W.2d 114 (Tex.

1996), noting that "we do not believe that *Leitch* should be construed to shield a corporate agent from liability to a third party in cases involving misrepresentation. . . ." *Kingston*, 82 S.W.3d at 762. Lastly, *Best v. ExxonMobil Corp.*, No. Civ. A. H-9-0625, 2010 WL 1169984 (S.D. Tex. Mar. 23, 2010) was a discovery rule case that noted a distinction between negligent misrepresentation claims and fraud, for statute of limitations purposes. It did not discuss the duty issue at all. Accordingly, the Court rejects Festa and the Group Defendant's argument that the Trustee cannot allege a duty owing to Soporex because the defendants were acting within the scope of their employment.

Festa and the Group Defendants next argue that courts do not find a duty to avoid making misrepresentations outside of relationships involving the provision of specialized information by professionals such as attorneys or accountants, and the like. Once again, the Court disagrees. While it is true that negligent misrepresentation claims often arise in that context, the Texas Supreme Court in *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787 (Tex. 1999) specifically rejected that notion, and stated that the liability of a professional for a negligent misrepresentation was NOT based on the breach of duty the professional owed to his clients, but instead was based on an independent duty owed to the non-client there at issue because of the attorney's awareness of the non-client's reliance on the attorney's representations and the attorney's intent that the non-client rely on the representation. It is true, as Festa and the Group Defendants suggest, that *McCamish* recognized a duty as against professionals, because the case before it involved a professional. *McCamish* did not, however, purport to *limit* the duty to professionals, and it did not announce a rule purporting to preclude the existence of a duty on the part of a non-professional.

Further, section 552 of the Torts Restatement is not by its terms limited to professionals.

Instead, it permits liability as against anyone who, *in the course of his business*, profession, *or employment,* or in *any other transaction in which he has a pecuniary interest*, negligently supplies false information for the guidance of others in their business. Lastly, several Texas courts have permitted negligent misrepresentation claims as against non-professionals. *See, e.g., Fed. Land Bank Assoc. of Tyler v. Sloane*, 825 S.W.2d 439 (Tex. 1991) (sustaining negligent misrepresentation claim between borrower and lender); *Valley Nissan, Inc. v. Davila*, 133 S.W.3d 702 (Tex. App. – Corpus Christi, 2003) (sustaining negligent misrepresentation claim between car buyer and car dealership).

Festa and the Group Defendants also argue, citing *McCamish*, that in a business or commercial transaction, or in an adversarial context, Texas courts do not find a duty exists. Once again, the Court disagrees. The facts in *McCamish* were as follows: the plaintiff borrowed funds from a bank to finance a real estate project, in part based on the bank's oral representation that it would later expand the plaintiff's line of credit. The bank subsequently declined to do so, and the plaintiff brought a lender liability claim against the bank. The plaintiff became concerned that the bank was insolvent and that the Federal Savings & Loan Insurance Corporation (FSLIC) would place the bank into receivership prior to trial. The plaintiff therefore entered into settlement negotiations with the bank and reached an agreement, but would only sign it if the bank's lawyers (the McCamish firm) would confirm that the settlement agreement would be enforceable against FSLIC. The McCamish firm did so by inserting a provision into the settlement agreement, but the court later concluded that the settlement agreement was *not* binding on FSLIC, and the plaintiff then filed a lawsuit against the McCamish firm for its negligent misrepresentation. The firm moved for summary judgment on the ground that it owed no duty to the plaintiff, a non-client, because there was no privity between them. The Texas Supreme Court ultimately disagreed, framing the issue as "whether

the absence of an attorney-client relationship precludes a third party from suing an attorney for negligent misrepresentation." *McCamish*, 991 S.W.2d at 791. The Texas Supreme Court stated:

> Under the tort of negligent misrepresentation, liability is not based on the breach of a duty a professional owes his or her clients or others in privity, but on an independent duty to the nonclient based on the professional's manifest awareness of the nonclient's reliance on the misrepresentation and the professional's intention that the nonclient so rely.

*McCamish*, 991 S.W.2d at 793. The court rejected the law firm's argument that imposing liability in favor of a nonclient would threaten lawyers with unlimited liability. In rejecting that argument, the court stated that section 552 of the Torts Restatement guards against that possibility by, among other things, requiring that any claimant justifiably rely on the alleged misrepresentation. In the course of its discussion, the court noted that "[g]enerally, courts have acknowledged that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context." *McCamish*, 991 S.W.2d at 794. The court also quoted from a treatise that noted that the same policy considerations would apply to business and commercial transactions. Thus, *McCamish* did not look to the existence of a commercial relationship or an adversarial context in order to determine whether a duty existed – it did so in the context of noting that an attorney would not be liable to a nonclient where the nonclient had not justifiably relied on the attorney's representation – and reliance may be precluded where the misrepresentation is made in an adversarial context. The *McCamish* court did *not* hold that there is no duty owed between the parties to a commercial transaction.

For all of these reasons, the Court concludes that the Complaint does not show on its face that no duty exists between Festa and the Group Defendants on the one hand and Respiratory on the other hand as a matter of law.

**Memorandum Opinion and Order**                                                                44

4. *Application of the Economic Loss Rule*

Under the economic loss rule, if a plaintiff only seeks to recover for the economic loss or damage to the subject matter of a contract, the plaintiff cannot maintain a tort action – the plaintiff's remedy lies under the contract. *Jim Walter Homes, Inc. v. Reed,* 711. S.W.2d 617 (Tex. 1986); *Sterling Chemicals Inc. v. Texaco, Inc.*, 259 S.W.3d 793 (Tex. App. – Houston [1st Dist.], 2007). Texas courts have applied the economic loss rule to bar tort claims between parties who are not in contractual privity. *Sterling Chemicals,* Inc., 259 S.W.3d at 796; *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282 (Tex. App. – Houston [14th Dist.], 2000).

a. *The Negligent Misrepresentation Claim*

The economic loss rule has been applied to bar claims for negligent misrepresentation. *See, e.g., Esty v. Beal Bank, S.S.B.*, 298 S.W.3d 280 (Tex. App. – Dallas, 2009); *Sterling Chemicals,* 259 S.W.3d at 797. A plaintiff may not bring a negligent misrepresentation claim unless the plaintiff establishes an injury that is distinct, separate, and independent from the economic losses recoverable on a breach of contract claim. *Id.*

Texas has adopted section 552B of the Torts Restatement. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662 (Tex. 1998). That section, entitled "Damages for Negligent Misrepresentation," provides:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
> > (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
> > (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
> (2) The damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

Therefore, if a plaintiff seeks only benefit-of-the-bargain damages, a plaintiff cannot establish an independent injury distinct from the economic losses that would be recoverable on a contract claim and the economic loss rule bars recovery of the damages sought on the negligent misrepresentation claim. *Sterling Chemicals*, 259 S.W.3d at 798.

The "out of pocket" or "reliance" measure of damages is the difference between the value paid and the value received, *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768 (Tex. 2009), and seeks to put the plaintiff in as good a position as he would have been had the contract (or misrepresentation) not been made. The "benefit of the bargain" or "expectancy" measure of damages is the amount necessary to put the plaintiff in as good a position as he would have been in had the contract been performed. *Quigley v. Bennett*, 227 S.W.3d 51 (Tex. 2007).

Here, the Trustee seeks several components of damages: (1) the fees paid under the Contract of approximately $2.1 million, (2) the amount of uncollected and uncollectible accounts receivable, alleged to be in excess of $8 million, (3) the expenses incurred to monitor and reclaim servicing of the Respiratory accounts, and (4) consequential damages arising from loss of revenue. The Court concludes that components (2), (3) and (4) are all "benefit of the bargain damages" that may not be recovered for a negligent misrepresentation claim under Texas law, and as to which the Trustee cannot establish an independent injury distinct from the economic losses that are recoverable on a contract claim. Therefore, the Court concludes that the Complaint establishes on its face that the Trustee's claim for these damages on her negligent misrepresentation claim are barred by the economic loss rule. However, the damages asserted in component (1), *i.e.*, the fees paid under the Contract, are "out of pocket" or "reliance" damages that are theoretically properly recoverable on a negligent misrepresentation claim, as they represent the difference between the amount paid for the

services and their alleged value.[25] Therefore, it cannot be said that the Trustee is seeking only benefit-of-the-bargain damages such that she cannot establish an independent injury. *Sterling Chemicals*, 259 S.W.3d at 798 (stating that if the plaintiff seeks only benefit-of-the-bargain damages, the plaintiff cannot establish an independent injury). Accordingly, the Court concludes that the Trustee's claim for negligent misrepresentation as against Festa and the Group Defendants should not be dismissed to the extent it seeks reliance damages, because the Complaint does not establish on its face that the Trustee's claim is barred by the economic loss rule.

Next, Festa and the Group Defendants argue that the Trustee's negligent misrepresentation claim is barred by the Contract, which contains "entire agreement" and "no-oral-modification" clauses.[26] The Court disagrees at this procedural juncture, while the adversary proceeding is in its infancy. The Complaint alleges, and Festa and the Group Defendants do not dispute, that the contracting parties were Inc. and CCN. Neither Respiratory nor Festa or any defendant other than CCN are parties to the Contract. While Texas law has recognized that non-parties may be bound to a contract in certain circumstances (such as agency, alter ego or third-party beneficiary theories), *see In re Weekley Homes, L.P.,* 180 S.W.3d 127 (Tex. 2005), the Complaint does not show on its face that any of those circumstances exist.[27]

---

[25] Of course, it may be established, at a later stage in the proceeding after discovery has concluded, that Respiratory is not the proper entity to assert this claim, if it is not the entity that incurred this damage or if it is not the entity to which the alleged misrepresentations were made.

[26] Section 10.12 of the Contract provides: "This agreement constitutes the complete and exclusive statement between the parties and supersedes all prior proposals, memoranda, letter of itent, discussions, negotiations and agreements, oral or written, and all other communications between the parties relating to the subject matter of this agreement." Section 10.10 of the Contract provides: "No oral representation or promise made by a party shall be binding upon either party nor shall this Agreement be modified or changed unless in writing signed by an authorized representative of both parties."

[27] Once again, it may be established at a later stage in the proceeding after discovery has concluded that Festa is, on some legal theory, bound by these contractual provisions. The Court merely concludes that Festa is not

For all of these reasons, the Court concludes that is possible for the Trustee to state a claim for negligent misrepresentation as against Festa and the Group Defendants as a legal matter. However, the Court also concludes that in light of the standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Trustee has not done so as a factual matter. Those cases make clear that while a complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of a cause of action's elements," *Twombly*, 550 U.S. at 545, and must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable . . . ." *Iqbal*, 129 S.Ct. At 1949. Here, the Complaint falls short.

The only mention of Soporex's reliance on any misrepresentations is contained in paragraph 57 of the Complaint, which simply states that "Soporex reasonably relied upon the false representations made by the Defendants, including, but not limited to, Soporex's decision to continue to do business with CCN and CareCentric and to pay the fees called for under the Agreement." The only allegation that could support a duty to avoid making misrepresentations, as defined by the Torts Restatement, is paragraph 58 of the Complaint, which simply alleges that "each Defendant who provided false information to Soporex had a pecuniary interest in Soporex continuing to pay CCN and/or CareCentric the contractual fees as provided in the Agreement." The Complaint fails to allege any facts in support of the Trustee's claim that Festa and the Group Defendants failed to exercise reasonable care in communicating with Soporex. The Complaint fails to allege any facts that would support an inference that Festa and the Group Defendants intended that Soporex be guided in its business decisions by their comments. In short, the Complaint contains largely formulaic recitations

---

entitled to a dismissal of the Complaint under Rule 12(b)(6) on this ground.

of the elements of a negligent misrepresentation claim, devoid of much factual content. The Trustee's conclusory allegations of reliance, intent and pecuniary interest are therefore not entitled to a presumption of truth.

Accordingly, the Trustee's cause of action on behalf of Respitory against Festa and the Group Defendants for negligent misrepresentation must be dismissed pursuant to Fed. R. Bankr. P. 7012 for failure to state a claim upon which relief may be granted, since the Trustee has failed to allege sufficient facts in support of her claim.

### b. *The Conversion Claim*

As noted earlier, the Court need only address the Group Defendants' Motion as it relates to the conversion claim by Respiratory, as the Trustee has conceded that she does not assert the claim on behalf of Inc. In addition, the claim is asserted only against CCN, CCI, Mestek, Reed, Capasso, Shea and Olearcek (not against Newkirk or Festa). Finally, CCI has not moved to dismiss the conversion claim.

The relevant Group Defendants assert that the conversion claim must be dismissed because the Trustee is "simply attempting to recast a breach of contract claim as a tort, [so] the Agreement's limitation of liability clause should be effective on Plaintiff's conversion claim and limit Plaintiff's recovery to an amount no more than $2,198,409.29 . . . ." *Group Defendants' Mot.*, p. 34. They do not cite any authority for the proposition that non-parties to the contract are bound by, or may enforce, this provision. Rather, the Court views this argument as merely a corollary to the Group Defendant's argument that the economic loss rule bars recovery on tort claims when injury alleged is economic losses relating to the subject matter of a contract, and in fact, as the arguments in the parties' briefing transformed, the Group Defendants also characterized their argument as one under

the economic loss rule. *Reply Br. Of Defs. Carecentric National, LLC, Carecentric Inc., Mestek, Inc., Stewart B. Reed. Lyle W. Newkirk, Ralph Capasso, Stephen M. Shea, and Steven F. Olearcek in Supp. Of Their Mot. To Dismiss*, p. 23 ("The economic loss rule consequently sounds the death knell for Plaintiff's conversion claim . . . ").

The Court has been unable to locate a single case in Texas clearly stating that the economic loss rule does, or does not, bar a claim for conversion as a categorical matter. The Trustee has cited one case in which the Court permitted a conversion claim in addition to a breach of contract claim. *Cass v. Stephens*, 156 S.W.3d 38 (Tex. App. – El Paso, 2004). The *Cass* court, without any discussion of the economic loss rule, stated:

> [T]he Casses removed large amounts of jointly-owned equipment to their solely owned wells without paying for the equipment. The facts also show a pattern of deception concerning the movements of the equipment and an attempt to hide the transfers. These facts may prove a breach of the operating agreements, but they also support a claim for conversion. Considering the evidence, the jury was free to infer that the prolonged retention of the equipment without payment was an act of conversion and not merely a breach of contract.

*Cass*, 156 S.W.3d at 62.

However, the Court's research has revealed several cases where Texas courts have applied the economic loss rule, which has also been referred to by Texas courts as the "independent injury" doctrine, to a conversion claim. In each, the court held that the claim was barred. *Dhanani v. Giles*, No. 10-07-00144-CV, 2008 WL 2210004 (Tex. App. – Waco, 2008) (barring conversion claim where a breach of contract claim and the conversion claim were "based on the same factual scenario" and where the exercise of dominion over the plaintiff's property was tantamount to a breach of contract); *Exxon Mobil Corp. v. Kinder Morgan Operating, L.P.,* 192 S.W.3d 120 (Tex. App. – Houston [14th Dist.], 2006 ) (barring conversion claim where the rights of the parties in regard to

propane gas were governed by the contract between them, and the only loss the plaintiff complained of was of the propane); *Mansfield Heliflight, Inc. v. Bell/Agusta Aerospace Co., LLC*, 507 F.Supp.2d 638, 648 n. 4 (N.D. Tex. 2007) (noting in *dictum* that the plaintiff's conversion claim "would also appear to be barred as a matter of law by the so-called 'independent injury' rule"). The *Exxon Mobil* court acknowledged that

> a legal duty generally exists in tort for one party not to convert the property of another party, which is separate and apart from any contractual relationship between the parties; however, the analysis does not end there and could not end there – otherwise, there would be no independent injury rule.

*Exxon Mobil*, 192 S.W.3d at 128.

The Court agrees with the *Exxon Mobil* court that the economic loss rule (or independent injury doctrine) as articulated by the Texas Supreme Court requires more analysis than a simple incantation that the rule does, or does not, apply to bar any claim asserted on a conversion theory.

As noted by the Texas Supreme Court:

> Over the last fifty years, this Court has analyzed the distinction between torts and contracts from two different perspectives. At first, we merely analyzed the source of the duty in determining whether an action sounded in tort or contract. For instance, in *International Printing Pressmen & Assistants' Union v. Smith,* 145 Tex. 399, 198 S.W.2d 729, 735 (1946), this Court held that " 'an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law.' " *Id.* (quoting 1 C.J.S. *Actions* § 44). Later, we overlaid an analysis of the nature of the remedy sought by the plaintiff. In *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617 (Tex.1986), we recognized that, while the contractual relationship of the parties could create duties under both contract law and tort law, the "nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* at 618. Because a mere breach of contract cannot support recovery of exemplary damages, and because the plaintiffs did not "prove a distinct tortious injury with actual damages," we rendered judgment that the plaintiffs take nothing on their exemplary damages claim. *Id.*

*Formosa Plastics Corp. USA v Presidio Engineers & Contractors*, 960 S.W.2d 41, 45 (Tex. 1998).

In *Southwestern Bell Tel. Co. v. Dellaney*, 809 S.W.2d 493, 494 (Tex. 1991), the Texas Supreme Court noted that "in determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."

Thus, the Court concludes that the existence of a general tort duty not to convert another's property is not dispositive. The Court must also analyze the duty alleged to have been breached, the nature of the remedy sought by the plaintiff and the nature of the plaintiff's loss. In the Complaint, the Trustee alleges that:

> *[a]s part of the Agreement*, CareCentric and CCN maintained a database of Soporex's customer data, including personal, proprietary and medical information. The Agreement states that Soporex is the 'sole and exclusive owner of the data resident on the database, all information put into the database, and all patient transaction data generated' during performance of the billing services by CCN.

*Compl.*, ¶ 63 (emphasis added). The Trustee further alleges that when the defendants learned that Soporex was setting up a parallel software system, "they gave instructions to cut off Soporex's access to patient records, including the billing and collection data that was housed on the . . . database." Compl. ¶ 64. These allegations show that the duty alleged to have been breached is one created by the Contract.

Further, the measure of damages for conversion is the fair market value of the property at the time and place of conversion, *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877 (Tex. App. – Dallas, 2009), and damages are limited to the amount necessary to compensate the plaintiff for the actual losses sustained as a natural and proximate result of the defendant's conversion. *Id*.

Here, the Trustee seeks damages "in excess of eight million dollars," *Compl.* ¶ 67, which the

Court presumes is the same $8 million that constitutes the "total amount of Soporex's uncollected and uncollectible accounts receivable." *Compl.* ¶¶47, 53, and 59 (the amounts sought in connection with the breach of contract, negligence and negligent misrepresentation claims). The Complaint does not allege that $8 million is the value of the property converted. The remedy sought is money damages, which mirror those sought on the breach of contract claim, and which relate exclusively to the subject matter of the contract – *i.e.*, the billing and collection of accounts receivable – and are thus properly recoverable in connection with the breach of contract claim. Accordingly, the Court concludes that the allegations of the Complaint, taken as true, establish that the Trustee's remedy lies in contract, not conversion. Accordingly, the conversion claim must be dismissed against those parties seeking its dismissal.

### 5.    *The Breach of Contract Claim*

CCN, the only defendant against whom the breach of contract claim is asserted, argues that the Trustee's demand for any damages in excess of $2,198,409.43 must be dismissed, since section 7 of the Contract limits CCN's liability to that amount.[28] The Trustee concedes that this provision operates as a limitation on CCN's liability for breach of contract. *Pltf's Resp. To Defs. Carecentric National, LLC, Carecentric, Inc., Mestek, Inc., Stewart B. Reed, Lyle W. Newkirk, Ralph Capasso, Stephen M. Shea, and Steven F. Olearcke's Mot. To Dism. And Br. In Supp.*, p. 24. Accordingly,

---

[28] CCN recognizes that ordinarily, the Court is to consider only the four corners of the Complaint when ruling on a motion under Rule 12(b)(6). CCN argues, however, that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Therefore, CCN argues that this Court may properly consider the Contract – specifically, section 7. The Court agrees, and the Trustee has not objected to this Court's consideration of section 7 of the Contract. Section 7 of the Contract essentially provides that Soporex agrees "that CCN's total liability under this agreement for any and all claims for damages regardless of the form of action, shall not exceed the total of fees paid by" Soporex, which the Complaint alleges is $2,198,409.43.

**Memorandum Opinion and Order**                                                                         53

the Trustee's breach of contract claim is dismissed, but only to the extent it seeks damages in excess of the specified amount, since that is the only basis advanced by CCN for dismissal of the claim.

### 6. *The Claim for Attorney's Fees*

Festa asserts, and the Trustee does not dispute, that a claim for attorney's fees is not an independent substantive cause of action. The Trustee concedes that attorney's fees are not recoverable with respect to her claims against Festa. *Pltf's Resp. To John R. Festa's Mot. To Dism. And Mem. In Supp. Thereof*, p. 20.

The Group Defendants also seek dismissal of the claim for attorney's fees. In response, the Trustee concedes that she only seeks attorney's fees with respect to the conversion claim, and that the conversion claim is not asserted by Inc. *Pltf's Resp.*, pp. 26-27; *Pltf's Supp. Br. in Resp. To Defs' Mot. To Dismiss*, p. 2.

The Court has concluded above that the conversion claim will be dismissed as barred by the economic loss rule. However, in the alternative, the Court also concludes that the Trustee is not entitled to attorney's fees even if the claim were to stand. The Trustee relies upon a Georgia statute in support of her entitlement to attorney's fees. The Court has concluded that Texas substantive law applies to the Trustee's claim for conversion, and the Trustee concedes that her claim for attorney's fees is not an independent substantive cause of action. Therefore, the Trustee's right to attorney's fees rises and falls with her success or failure on her other substantive claims for relief, which are governed by Texas law, and the Georgia statute simply does not apply. *Herkner v. Argo-Tech Corp. Costa Mesa*, No. H-06-2491, 2008 WL 2838115 at *1 (S.D. Tex. July 21, 2008) ("The award of attorney's fees is governed by the law of the state whose substantive law is applied to the underlying claims") (*quoting Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005)).

Therefore, the Court would also dismiss the Complaint to the extent that the Trustee asserts entitlement to attorney's fees premised upon the Georgia statute, even if the conversion claim upon which it is based were to stand.

### 7.  The Trustee's Objection to CCN's Proofs of Claim

The two proofs of claim were filed by CCN against Inc.  CCN first argues that the count in the Complaint that objects to CCN's claims is wholly conclusory and fails to satisfy the standards for pleading as set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Paragraph 69 of the Complaint states, in full:

> Defendant CCN filed Claim No. 54 in the amount of $131,922.98 on November 13, 2008 and Claim No. 111 for an unspecified amount on January 12, 2009, both in Case No. 08-34174. The Trustee objects to Claim Nos. 54 and 111 and disputes that CCN is owed any sum by Soporex.  Accordingly, the Trustee requests that the Court disallow Claim No. 54 and Claim No. 111 filed by CCN in their entirety.

The Trustee responds that Claim 54 is a claim by CCN for approximately $132,000 for fees allegedly owed to CCN for services performed between November 30, 2007 and February 15, 2008, and thus represents a claim for services rendered after CCN acknowledged that it had negligently performed under the Contract.  The Trustee contends that her claim objection is "obviously sufficiently pleaded" since the Complaint sets forth in detail CCN's numerous breaches, and under Georgia law, CCN has no right to recover damages for breach of contract where it has failed to perform.  The Trustee asserts that Claim 111 is based upon CCN's allegations in a pre-petition lawsuit between the parties in which CCN asserted counterclaims. The Trustee responds on the merits (in her briefing, but not in her Complaint) to each of those alleged counterclaims, and therefore argues that Count 5 is sufficiently pleaded.

CCN notes, and the Court agrees, that the Trustee's response clarifies that the Trustee is

essentially seeking to assert defenses to CCN's state-court counterclaims in her objection to Claim No. 111. CCN urges that the objection ought to be dismissed "unless it is procedurally proper for Plaintiff to join issue with CCN's Claims in this way." *Defs.' Reply Br.*, p. 23.

The Court concludes that the assertion of the Trustee's objection to CCN's claims in the context of this adversary proceeding is procedurally proper. Under Federal Rule of Bankruptcy Procedure 3007(b), a "party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." Under Federal Rule of Bankruptcy Procedure 7001(1), an adversary proceeding includes a proceeding "to recover money or property." Since the Trustee seeks to recover damages on a variety of state-law theories, she was required to do so in the context of an adversary proceeding. And since her bases to resist CCN's proofs of claim are based on those same state-law theories, it was procedurally proper for her to include her claim objection as a cause of action in that adversary proceeding. *In re Maple*, 434 B.R. 363 (Bankr. E.D. Va. 2010) (permitting objection to claim to be included in an adversary proceeding).

The Court also concludes that CCN has its procedure backwards when it asserts that the Trustee's claim objection must be tested by Rule 12(b)(6). Instead, it is CCN's proof of claim that gets tested by Rule 12(b)(6) when an objection to that claim is filed. *In re G-I Holdings, Inc.*, No. 01-30135(RG), 2010 WL 5690394 (Bankr. D.N.J. Dec. 14, 2010) (stating that the claimant must plead factual content that allows the court to draw the reasonable inference that the debtor is liable for the misconduct alleged, citing *Twombly* and *Iqbal*); *see also In re Cloud*, 214 F.3d 1350 (5th Cir. 2000) (table, text in Westlaw) (stating that it was not error for bankruptcy court to test the sufficiency of a proof of claim under Rule 12(b)(6) and view the objection to claim as a motion to dismiss under

that rule); *but see In re Barnhart*, No. 09-BK-00109, 2010 WL 724703 (Bankr. N.D. W. Va. Feb. 26, 2010) (An objection to claim which contains no facts to support disallowance may be dismissed under Rule 12(b)(6)).

Nevertheless, the Court does conclude that the Trustee's basis for her objection to CCN's claim is succinct, to say the least, and both the parties and the Court would benefit from a more detailed factual recitation. Therefore, the Court directs that Count 5 be amended within fourteen days of the entry of this Memorandum Opinion and Order on the docket to further elucidate the Trustee's basis for her objection to CCN's claims, and to assert whatever "defenses" to the counterclaims that form the basis of Claim No. 111 she deems appropriate. For the reasons explained below, no further amendment of the Complaint is authorized at this time.

### D. *Leave to Amend*

The Trustee argues in her briefing that to the extent the Court dismisses the Complaint, she intends to seek leave to amend. Both Festa and the Group Defendants argue in their supplemental replies that the Trustee should not be permitted leave to amend the Complaint. The Court will further address the parties' arguments when, and if, a motion for leave to amend is filed, and declines to issue an advisory ruling now, when such a motion is not on file and neither the Court nor the defendants have seen a proposed amended complaint.

## III. CONCLUSION

For the reasons set forth above, the Court concludes that the Court need not choose between federal or forum choice-of-law rules, as application of both sets of rules leads to the same result – that this Court should apply the "most significant contacts" test to determine the appropriate choice of substantive law governing the Trustee's claims. Application of that test leads the Court to conclude

that Texas law governs the application of the statute of limitations for the Trustee's claims, and provides the substantive law by which this Court must judge the Trustee's claims for negligence, negligent misrepresentation and conversion. The Court further concludes that the parties' choice-of-law provision in the Contract mandates the application of Georgia law to all issues respecting the interpretation of the Contract between Inc. and CCN.

A statute of limitations defense may be raised on a motion pursuant to Fed. R. Bankr. P. 7012 and may be granted if the Trustee's allegations, taken as true, establish that her relief is barred by the applicable statute of limitations. The Trustee's negligence, negligent misrepresentation and conversion claims are governed by Texas's two-year statute of limitations.

The Trustee concedes that her negligence claim does not lie under Texas law. Accordingly, it is dismissed against all defendants.

The Court concludes that the allegations of the Complaint do not show that the negligent misrepresentation claim is barred by the statute of limitations, as the Complaint plausibly alleges that the cause of action accrued within two years of the filing of Respiratory's bankruptcy petition. Accordingly, the statute of limitations on the negligent misrepresentation claim had not expired on the petition date, and section 108 of the Bankruptcy Code extended the running of the statute of limitations. As an alternative ruling, the Court also concludes that neither the discovery rule nor the continuing tort doctrine would apply to defer the accrual of the Trustee's negligent misrepresentation claim, because the injury that the Trustee alleges is not of a type that is "inherently undiscoverable" and the conduct complained of is not the type of conduct that the continuing tort doctrine is designed to address.

The Court concludes that since both parties agree that the cause of action for conversion

accrued in 2008, Texas's two-year statute of limitation had not expired as of the petition date, and section 108 of the Bankruptcy Code extended the statute of limitations such that the Trustee's Complaint does not establish on its face that the conversion claim is barred by limitations.

The Trustee has sufficiently alleged a duty owed by the defendants, such that the Trustee's negligent misrepresentation claim survives the Festa Motion and the Group Defendants' Motion.  The Complaint does not establish on its face that the Trustee's negligent misrepresentation claim is barred by the economic loss rule, except that the claim is barred to the extent the Trustee seeks "benefit of the bargain" damages.  To the extent that the Complaint seeks "benefit of the bargain" damages, it is dismissed as barred by the economic loss rule.

However, even though the Court has concluded that the Trustee's claim for negligent misrepresentation does not show, on its face and as a legal matter, that the Trustee (1) cannot allege a duty and (2) cannot escape the economic loss rule (except with respect to the extent the Trustee seeks to recover "benefit of the bargain" damages, where the Court concludes that the Complaint shows on its face that the negligent misrepresentation claim is barred by the economic loss rule), the claim is factually deficient under *Twombly* and *Iqbal* and must accordingly be dismissed pursuant to Fed. R. Bankr. P. 7012 for failure to state a claim upon which relief may be granted, since the Trustee has failed to allege sufficient facts in support of her claim.

The Complaint establishes on its face that the Trustee's claim for conversion is barred by the economic loss rule.  Accordingly, the conversion claim must be dismissed for this reason against those parties who sought such a dismissal – *i.e.*, all defendants except CCI.

The Trustee's breach of contract claim against CCN is dismissed to the extent it seeks damages in excess of $2,198,409.43, since the Trustee concedes that her claim is capped at that

amount pursuant to section 7 of the Contract.

It is procedurally appropriate for the Trustee to raise her objections to CCN's proofs of claim in the context of this adversary proceeding. Nevertheless, because the defendants and the Court will be assisted by it, the Trustee is directed to amend the Complaint within fourteen days of the date that this Memorandum Opinion and Order is entered on the docket to further elucidate the Trustee's bases for her objection to CCN's claims, and to assert whatever "defenses" to the counterclaims that form the basis of Claim No. 111 that she deems appropriate. No further amendment to the Complaint is authorized at this time.

In sum, the Trustee has conceded that she is no longer attempting to pursue the following claims against any defendant: (1) breach of contract by Respiratory, (2) breach of contract by Inc. to the extent that the Complaint seeks damages in excess of $2,198,409.43, (3) negligent misrepresentation and conversion by Inc., and (4) negligent misrepresentation by Respiratory against CCN. The Trustee has also conceded that she is not pursuing a conversion claim on Respiratory's behalf against Festa and that she is not seeking to recover attorney's fees from Festa. The Court is dismissing the Trustee's negligence claim against all defendants because Texas law applies and the Trustee has conceded that her negligence claim "cannot be sustained" under Texas law.

Subject to the Trustee filing a motion for leave to amend that is granted after notice and a hearing, the Court is dismissing (1) Respiratory's negligent misrepresentation claim against all defendants as to which it is asserted, and (2) Respiratory's conversion claim against all other defendants except CCI (because CCI did not seek such a dismissal). Finally, to the extent the Trustee seeks to recover attorneys' fees on her conversion claim, her request for attorneys' fees is dismissed as a matter of law.

**SO ORDERED**.

**# # # END OF MEMORANDUM OPINION AND ORDER # # #**